**John Richard Ludbrooke YOUELL, an underwriter at Lloyd's London for himself and as a representative of those other Underwriters at Lloyd's London severally subscribing to certain Global Corporate Excess Insuring Agreements at issue and the following London Market Insurance Companies and other international Underwriting entities, also severally subscribing to the Insuring Agreements at issue, each on their own behalf and not for the other; et al., Plaintiffs–Appellants,**

v.

**EXXON CORPORATION, Defendant–Appellee.**

No. 848.
Docket 94–7691.

United States Court of Appeals, Second Circuit.

Argued Nov. 30, 1994.

Decided April 4, 1995.

Vacated Oct. 2, 1995.

Decided Jan. 12, 1996.

Richard W. Palmer, New York City (Michael B. McCauley, Frank P. DeGiulio, H. Coleman Switkay, Palmer Biezup & Henderson, Harold R. Tyler, Jr., William F. Cavanaugh, Jr., Lisa C. Cohen, Patterson, Belknap, Webb & Tyler, of counsel), for Plaintiffs–Appellants.

James H. Carter, Sullivan & Cromwell, New York City, for Defendant–Appellee.

Before MAHONEY, McLAUGHLIN and HEANEY,* Circuit Judges.

PER CURIAM:

In *Youell v. Exxon Corp.*, 48 F.3d 105 (2d Cir.1995), we reversed the district court's dismissal of an action brought by the insurers for Exxon Corporation (the "Underwriters") against Exxon Corporation ("Exxon"), seeking a declaratory judgment that they did not have to reimburse Exxon for certain losses incurred when its oil tanker, the *Exxon Valdez*, was wrecked. Driven primarily by the important federal question at issue in this case, we held that, under *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), and *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), the district court abused its discretion by dismissing the declaratory judgment action in deference to the Texas state court proceeding; we therefore reinstated the Underwriters' declaratory judgment suit. *See Youell*, 48 F.3d at 114.

Two months after our decision in *Youell*, the United States Supreme Court decided *Wilton v. Seven Falls Co.*, —— U.S. ——, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995). In *Wilton*, the Court held that a district court's decision to stay or dismiss a declaratory judgment action in deference to a parallel state court proceeding is governed by the discretionary standard set forth in *Brillhart v. Excess Insurance Co.*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942), rather than the "exceptional circumstances" test developed in *Colorado River–Moses H. Cone*. *See Wilton*, —— U.S. at ——, 115 S.Ct. at 2144.

Exxon, relying on *Wilton*, petitioned the Supreme Court for a writ of certiorari. The Supreme Court granted certiorari, and vacated *Youell*, remanding the case to us for reconsideration in light of *Wilton*. *See Exxon Corp. v. Youell*, —— U.S. ——, 116 S.Ct. 43, 133 L.Ed.2d 9 (1995) (mem.).

On remand from the Supreme Court, we once again reverse the district court's dismissal of the Underwriters' declaratory judgment action. Even when made under the more discretionary *Brillhart* doctrine, a decision to abstain in this case would constitute an abuse of discretion in light of the important federal question presented.

## BACKGROUND

We briefly summarize the facts below. A more detailed account appears in our initial opinion. *See Youell*, 48 F.3d at 107–08.

The Underwriters subscribed to a series of Global Corporate Excess insurance agreements (collectively, the "Agreement") with Exxon covering the period from November 1988 through October 1989. The Agreement insured Exxon and some of its subsidiaries against certain risks incurred during their global activities.

In March 1989, while skippered by Captain Joseph Hazelwood, the *Exxon Valdez* ran aground near Valdez, Alaska and spilled 10.8 million gallons of oil into Prince William Sound. Having suffered prodigious losses as a result of the mishap, Exxon sought reimbursement of some $2 billion from the Underwriters under the Agreement. Believing that Hazelwood was drunk at the time of the

---

* Honorable Gerald W. Heaney, of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

grounding and that Exxon knew he was an alcoholic, the Underwriters denied Exxon coverage.

Exxon sued the Underwriters in a Texas state court, alleging that they had breached the Agreement and the covenant of good faith and fair dealing, and had also violated Texas insurance law. The Underwriters, in turn, filed their own suit against Exxon in the United States District Court for the Southern District of New York (Loretta A. Preska, *Judge* ), seeking a declaratory judgment that they were not liable to Exxon. Invoking the *Colorado River–Moses H. Cone* abstention doctrine, the district court dismissed the Underwriters' action, finding that exceptional circumstances warranted deference to the Texas state proceedings. *See Youell v. Exxon Corp.,* 1994 WL 376068 (S.D.N.Y. July 19, 1994). We reversed, holding that because of the important federal question presented, it was an abuse of discretion under *Colorado River–Moses H. Cone* for the district court to abstain. *See Youell,* 48 F.3d at 114.

Upon Exxon's petition, the Supreme Court granted certiorari, vacated our judgment, and remanded with instructions to reconsider our opinion in light of *Wilton. See Exxon Corp.,* —— U.S. at ——, 116 S.Ct. at 43. We solicited and received letter briefs from both parties. Having reviewed them, we see no need to disturb our initial decision.

## DISCUSSION

■ In *Wilton,* the Supreme Court resolved a clash among the circuits concerning whether a district court's decision to dismiss a federal declaratory judgment action in favor of parallel state litigation is governed by the discretionary standard of *Brillhart v. Excess Insurance Co.,* 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942), or the "exceptional circumstances" test set forth in *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), and *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The Supreme Court endorsed the *Brillhart* test, finding that "[d]istinct features of the Declaratory Judgment Act ...

justify a standard vesting district courts with greater discretion in declaratory judgment actions than that permitted under the 'exceptional circumstances' test of *Colorado River* and *Moses H. Cone." Wilton,* —— U.S. at ——, 115 S.Ct. at 2142. In so holding, the Court overturned precedent in this and other circuits. *See, e.g., Lumbermens Mut. Casualty Co. v. Connecticut Bank & Trust Co.,* 806 F.2d 411, 413 (2d Cir.1986); *Employers Ins. of Wausau v. Missouri Elec. Works, Inc.,* 23 F.3d 1372, 1374 n. 3 (8th Cir.1994).

■ On remand, therefore, we consider afresh whether application of the more discretionary *Brillhart* test alters our initial decision to reinstate the Underwriters' declaratory judgment action. We conclude that it does not.

Under *Colorado River–Moses H. Cone* abstention, a district court may decline to exercise jurisdiction over a case only under exceptional circumstances that relate to federal-state comity. *See Wilton,* —— U.S. at ———– ——, 115 S.Ct. at 2141–42. The *Brillhart* abstention doctrine, on the other hand—now clearly applicable to declaratory judgment actions such as the one before us—gives the district court broader discretion to determine "whether and when to entertain an action ..., even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Id.* at ——, 115 S.Ct. at 2140. Hence, under *Brillhart,* the question for a district court presented with a declaratory judgment suit, is " 'whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court.' " *Id.* (quoting *Brillhart,* 316 U.S. at 495, 62 S.Ct. at 1176).

Although *Brillhart* did not exhaustively catalog the factors governing a district court's exercise of its discretion to hear a declaratory judgment suit, "it did provide some useful guidance in that regard." *Id.* For example, in determining whether the claims before it "can better be settled" in the state proceedings, the district court should examine the scope of the parallel state litigation and the

nature of the defenses available there. *Brillhart*, 316 U.S. at 495, 62 S.Ct. at 1176. It should also consider "whether the claims of all parties in interest can satisfactorily be adjudicated in that [state] proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc." *Id.*

Though *Brillhart* left the exact contours of a district court's discretion to be molded by future cases, it "indicated that, at least where another suit involving the same parties and presenting opportunity for ventilation of *the same state law issues* is pending in state court, a district court might be indulging in '[g]ratuitous interference,' if it permitted the federal declaratory action to proceed." *Wilton*, —— U.S. at ——, 115 S.Ct. at 2141 (quoting *Brillhart*, 316 U.S. at 495, 62 S.Ct. at 1176) (emphasis added). Underlying the *Brillhart* decision was the Court's concern that it was being called upon to pronounce independently upon *state* law. "To do so," the Court held, "would be to disregard the limitations inherent in our appellate jurisdiction. It is not our function to find our way through a maze of [state] statutes and decisions...." *Brillhart*, 316 U.S. at 497, 62 S.Ct. at 1176.

To resolve novel questions of federal law, however, is quintessentially our obligation. We were aware that the Supreme Court had granted certiorari in *Wilton* when we filed our initial opinion. Nevertheless, we expressly noted that the instant case was "fundamentally distinct from *Wilton* because ... federal law supplies a rule of decision. *Wilton*, in contrast, involved state law only." *Youell*, 48 F.3d at 109 n. 1.

We adhere to that view. The issue here—whether maritime losses caused by an insured's recklessness are fortuitous—"is a novel issue of federal admiralty law" that "is truly a brooding omnipresence." *Id.* at 114. Federal adjudication of this issue will not constitute "[g]ratuitous interference with the orderly and comprehensive disposition of [the] state court litigation." *Brillhart*, 316 U.S. at 495, 62 S.Ct. at 1176. Nor can this

issue "better be settled" in Texas state court: "[A] federal question of first impression must all but demand that the federal court hear the case.... While we loathe wasting judicial resources, it would be worse to cede federal review of an issue of federal law merely because Exxon won the race to judgment in state court." *Youell*, 48 F.3d at 111–12, 114. Moreover, it bears emphasis that the *Wilton* Court specifically declined "to delineate the outer boundaries of [*Brillhart*] discretion in ... cases raising issues of federal law." *Wilton*, —— U.S. at ——, 115 S.Ct. at 2144.

Were we to remand this case for the district court to apply an abstention analysis employing its broader discretion under *Brillhart*, we assume that it would again abstain in deference to the Texas litigation. Nonetheless, we would review that decision for an abuse of discretion. *See id.* at ——, 115 S.Ct. at 2144. And, based on the novel federal admiralty question presented in this case, we would again hold that a decision to dismiss the Underwriters' declaratory judgment action constituted an abuse of that discretion. Thus, because a remand would be pointless, we reverse the district court's judgment of dismissal, and reinstate the declaratory judgment action.

## CONCLUSION

We reverse the district court's judgment of dismissal, and reinstate the declaratory judgment action.

REVERSED.