United States Court of Appeals

Fifth Circuit

**F I L E D**

**August 13, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————————————

No. 02-60578

———————————————

THE SHERWIN-WILLIAMS COMPANY,

Plaintiff/Appellant,

v.

HOLMES COUNTY; WARREN COUNTY; CLAIBORNE COUNTY; JEFFERSON COUNTY; BOLIVAR COUNTY; THE JEFFERSON COUNTY SCHOOL DISTRICT; JOHN DOES, JOHN DOE COUNTIES AND SCHOOL DISTRICTS

Defendants/Appellees.

———————————————————————————————————

Appeal from the United States District Court
for the Southern District of Mississippi

———————————————————————————————————

Before KING, Chief Judge, DAVIS, Circuit Judge, and ROSENTHAL,[*] District Judge.

ROSENTHAL, District Judge:

This is an appeal from the dismissal of a declaratory judgment suit filed in federal court. Plaintiff, Sherwin-Williams Company, sought a declaratory judgment in federal court as to certain issues relating to its liability to the Mississippi school districts and counties named as defendants for the cost of lead paint abatement. The district court concluded that although it had jurisdiction and

---

[*] District Judge of the Southern District of Texas, sitting by designation.

authority to decide the declaratory judgment action, it should decline to do so. We conclude that the district court gave insufficient weight to factors supporting the exercise of its jurisdiction to decide the declaratory judgment suit. We reverse the decision to dismiss and remand.

## I. Background

### A. Procedural and Factual History

The declaratory judgment plaintiff, the Sherwin-Williams Company, is a long-time manufacturer and distributor of paint. The declaratory judgment defendants are school districts and counties in Mississippi. These districts and counties own and operate school buildings that may contain lead-based paint. In April 2001, the Jefferson County School District sued a number of paint manufacturers, including Sherwin-Williams, and a trade association, the Lead Industries Association, in the Circuit Court for Jefferson County, Mississippi. The school district alleged that the defendants had manufactured, distributed, and promoted dangerous lead paints used in Jefferson County schools and claimed the right to recover the costs of lead paint abatement. Sherwin-Williams, the other paint manufacturer defendants, and the trade association were all diverse to the school district. Although the school district had also sued a local hardware store, defendants removed, alleging that the school district had fraudulently joined the in-state store to defeat diversity. While the motion to remand was pending, Sherwin-Williams filed this declaratory judgment action in federal district court.

In its declaratory judgment complaint, Sherwin-Williams pleaded diversity of citizenship as the basis for federal jurisdiction. Sherwin-Williams alleged that statements by the school districts and counties and their lawyers, reported in the media, made clear their intention to file a number of lead paint abatement suits in different counties in Mississippi against Sherwin-Williams and other paint manufacturers. To avoid having to litigate numerous anticipated suits in different state courts,

Sherwin-Williams asked the federal court to decide in a single declaratory judgment action four legal issues asserted to be common to all the suits. Sherwin-Williams framed the issues as follows:

1. The Counties and School Districts, cannot, consistent with the First Amendment of the United States Constitution, seek to impose liability on Sherwin-Williams based on its membership in the [Lead Industries Association, Inc.] or other trade association, its petitioning of any federal, state or local government agency, its public expressions of opinion or other activities protected by the First Amendment;

2. Any claim that Sherwin-Williams inadequately warned or labeled about the dangers of its products after the passage of the Federal Hazardous Substances Act is preempted by that Act, with which Sherwin-Williams's products complied;

3. Without identification of any product it made or sold creating a lead paint hazard in a particular facility owned by the Counties and School Districts that caused actual damages, Sherwin-Williams is not the proximate cause of their injuries; and

4. Sherwin-Williams has no duty to reimburse the Counties and School Districts for costs of maintenance, operations, renovations, repair, testing, inspection, or abatement associated with lead paint or pigment in their facilities.

Sherwin-Williams also sought a preliminary and permanent injunction prohibiting the school districts and counties from filing or proceeding with any suit in violation of the district court's declaration of Sherwin-Williams's rights and obligations.

After Sherwin-Williams filed this declaratory judgment suit, another Mississippi school district filed a second lead paint abatement suit in state court. In November 2001, the Quitman County School District sued the same paint manufacturer and trade association defendants that the Jefferson

3

County School District had sued, in a different state court. Defendants, including Sherwin-Williams, removed that case to the United States District Court for the Northern District of Mississippi.

In March 2002, the federal district court denied the motion to remand the suit that the Jefferson County School District had filed, finding that the school district had fraudulently joined the nondiverse hardware store as a defendant. The motion to remand remained pending in the suit the Quitman County School District suit had filed, but no state court suits were pending.

The defendant school districts and counties moved to dismiss Sherwin-Williams's federal declaratory judgment suit, based on the Anti-Injunction Act, 28 U.S.C. § 2283, and "the principles of comity, federalism, and abstention." (Docket Entry No. 2 (Defendants' Motion to Dismiss), ¶¶ 1-2). The district court granted the motion to dismiss in May 2002. No parallel state court case was pending when the district court declined to exercise its jurisdiction over the federal declaratory judgment suit. In July 2002, the federal district court denied the motion to remand the case that the Quitman County School District had filed, again finding fraudulent joinder.

Sherwin-Williams timely appealed the federal court's dismissal of the declaratory judgment action.

### B.     The District Court Decision

In analyzing whether to decide or dismiss the declaratory judgment suit, the district court followed the three steps this court set out in Orix Credit Alliance, Inc. v. Wolfe, 212 F.3d 891, 895 (5th Cir. 2000). A federal district court must determine: (1) whether the declaratory action is justiciable; (2) whether the court has the authority to grant declaratory relief; and (3) whether to exercise its discretion to decide or dismiss the action. The district court properly concluded that Sherwin-Williams presented a justiciable claim; there was an actual controversy among the parties.

4

Rowan Cos., Inc. v. Griffin, 876 F.2d at 26 (quoting Brown & Root, Inc. v. Big Rock Corp., 383

F.2d 662, 665 (5th Cir. 1967).  The district court also properly concluded that it had the authority

to decide the declaratory judgment suit.  Diversity jurisdiction was present and the Anti-Injunction

Act did not apply because there was no pending state court action between Sherwin-Williams and any

of the declaratory judgment defendants.[1]  The district court analyzed the third step under Orix and

concluded that it should decline jurisdiction over the declaratory judgment action.  That analysis and

conclusion is the basis of this appeal.

In St. Paul Ins. Co. v. Trejo, 39 F.3d 585 (5th Cir. 1994), this court identified seven

nonexclusive factors for a district court to consider in deciding whether to decide or dismiss a

declaratory action.  These factors are:

> (1)  whether there is a pending state action in which all of the matters in controversy may be fully litigated;
>
> (2)  whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant;
>
> (3)  whether the plaintiff engaged in forum shopping in bringing the suit;
>
> (4)  whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist;

---

[1]  Section 2283 provides:

> A court of the United States may not grant an injunction to stay proceedings in a state court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

Under the second element of the Orix Credit Alliance test, a district court does not have authority to consider the merits of a declaratory judgment action when: (1) the declaratory defendant previously filed a cause of action in state court; (2) the state case involved the same issues as those in the federal court; and (3) the district court is prohibited from enjoining the state proceedings under section 2283.  Travelers Ins. Co. v. Louisiana Farm Bureau Fed'n, Inc., 996 F.2d 774, 776 (5th Cir. 1993) (citing Texas Employers' Ins. Ass'n v. Jackson, 862 F.2d 491, 506 (5th Cir. 1988)).

(5) whether the federal court is a convenient forum for the parties and witnesses;

(6) whether retaining the lawsuit would serve the purposes of judicial economy; and

(7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

Id. at 590-91; See also Vulcan Materials Co. v. City of Tehuacana, 238 F.3d 382, 390 (5th Cir. 2001); Travelers Ins. Co. v. Louisiana Farm Bureau Fed'n, Inc., 996 F.2d 774, 778 (5th Cir. 1993).

The district court applied the Trejo factors, finding as follows:

(1) there was no pending state court action between Sherwin-Williams and the declaratory defendants at the time of its ruling;

(2) Sherwin-Williams "filed this lawsuit in anticipation of possible lawsuits by the declaratory plaintiffs";

(3) Sherwin-Williams engaged in forum-shopping, shown by the fact that "(1) [Sherwin-Williams] seeks declaratory relief against Mississippi counties that are frequently mentioned as being counties in which large jury verdicts are awarded, and (2) federal forums in the State of Mississippi are sought by some manufacturers in an attempt to avoid the state court system";

(4) there was no inequity in allowing the declaratory judgment to be decided in federal court;

(5) some of the defendants would be inconvenienced in the event that the district court heard the declaratory action;

(6) retaining the lawsuit "would not necessarily serve the purposes of judicial economy in that the declaratory judgments . . . would not preclude the filing of lawsuits by the declaratory defendants in their respective counties"; and

6

(7)    Sherwin-Williams was not requesting that the district court construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties was pending.

(Dct. Op., pp. 12-14).  The district court found that taken together, these findings weighed in favor of dismissal.  Sherwin-Williams timely appealed.

## II.  Analysis

The Declaratory Judgment Act, 28 U.S.C. § 2201(a), "is an enabling act, which confers discretion on the courts rather than an absolute right on a litigant."  Wilton v. Seven Falls Co., 515 U.S. 277, 287, 115 S. Ct. 2137, 2143, 132 L. Ed.2d 214 (1995) (quoting Public Serv. Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 241, 73 S. Ct. 236, 239, 97 L.Ed. 291 (1952)).  "The Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants."  Wilton, 515 U.S. at 286, 115 S. Ct. at 2142.  "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration."  Wilton, 515 U.S. at 289, 115 S. Ct. at 2143.

This court reviews the dismissal of a declaratory judgment action for abuse of discretion.  Orix Credit Alliance, 212 F.3d at 895; Wilton, 515 U.S. at 296-97, 115 S. Ct. at 2144 (holding that the standard of Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491, 62 S. Ct. 1173, 86 L.Ed. 1620 (1942) governs a district court's decisions about the propriety of hearing a declaratory judgment action).

7

### A.    The Trejo Factors

Before Wilton, the circuits disagreed as to whether the Brillhart standard or a more stringent test applied to a district court's decision to decline jurisdiction over a declaratory judgment action. Under Brillhart, a district court "should ascertain whether the questions in controversy between the parties to the federal suit . . . can be better settled in the proceeding pending in the state court."  316 U.S. at 494, 62 S. Ct. at 1176.  Brillhart identified the following nonexclusive factors in this analysis:

> (1)    the scope of the pending state court proceeding and the nature of the defenses open there;
>
> (2)    whether the claims of all parties in interest can be satisfactorily adjudicated in [the state] proceeding;
>
> (3)    whether necessary parties have been joined;
>
> (4)    whether such parties are amenable to process in [the state] proceeding;
>
> (5)    whether it would be "uneconomical" or "vexatious" to proceed where another suit was pending in state court; and
>
> (6)    whether hearing the declaratory judgment action would represent "gratuitous interference with the orderly and comprehensive disposition of a state court litigation."

Id.  After the Supreme Court decided Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 96 S. Ct. 1236, 47 L.Ed.2d 483 (1976), some circuits required a district court to hear a declaratory judgment action unless "exceptional circumstances" were present.  In Wilton, the Supreme Court resolved the circuit split, holding that the less demanding Brillhart standard applies.

The Fifth Circuit uses the Trejo factors to guide a district court's exercise of discretion to accept or decline jurisdiction over a declaratory judgment suit.  Every circuit has a similar test,

although expressed in different terms.[2] Despite the circuits' different expressions of the Brillhart factors, each circuit's formulation addresses the same three aspects of the analysis.

The first is the proper allocation of decision-making between state and federal courts. Each circuit's test emphasizes that if the federal declaratory judgment action raises only issues of state law

---

[2] The Fourth Circuit identified the following factors for a district court to use in determining whether to hear a declaratory judgment action: (1) whether declaratory relief will serve a useful purpose in clarifying and settling the legal relations at issue; (2) whether declaratory relief will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding; (3) whether the state has a strong interest in having the issues decided in its courts; (4) whether the state courts could resolve the issues more efficiently than the federal courts; (5) whether the presence of "overlapping issues of fact or law" might create unnecessary "entanglement" between state and federal courts; (6) whether the federal action is mere "procedural fencing" in the sense that the action is merely the product of forum shopping; and (7) the existence of a parallel state court proceeding. Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 325 (4th Cir. 1937) (citing E. BORCHARD, DECLARATORY JUDGMENTS 107-109 (1934)); Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371, 376 (4th Cir. 1994); Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co., 139 F.3d 419, 423 (4th Cir. 1998). The Sixth Circuit applies the following factors: (1) whether the judgment would settle the controversy; (2) whether the declaratory judgment would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for *res judicata*"; (4) whether the use of a declaratory action would increase the friction between federal and state courts and improperly encroach on state jurisdiction; (5) whether there is an alternative remedy that is better or more effective; (6) whether the underlying factual issues are important to an informed resolution of the case; (7) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and (8) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action. Scottsdale Ins. Co. v. Roumph, 211 F.3d 964, 968 F.3d (6th Cir. 2000). The Tenth Circuit uses the first five factors of the Roumph test. U.S. v. City of Las Cruces, 289 F.3d 1170, 1183-1191 (10th Cir. 2002); Buzas Baseball, Inc. v. Bd, of Regents of Univ. Sys. of Georgia, 189 F.3d 477 at *2 (10th Cir. 1999)(unpublished opinion); State Farm Fire & Cas. Co. v. Mhoon, 31 F.3d 979, 983 (10th Cir. 1994). The Seventh Circuit has identified four factors: (1) whether the issues in the state and federal proceedings are distinct; (2) whether the parties are identical in the state and federal proceedings; (3) whether going forward with the declaratory action will serve a useful purpose in declaring the rights of the parties or amount to merely duplicative and piecemeal litigation; and (4) whether comparable relief is available to the declaratory judgment plaintiff in another forum or another time. Nationwide Ins. v. Zavalis, 52 F.3d 689 (7th Cir. 1995). The Ninth Circuit's version of the Brillhart factors states that a district court should examine whether exercising jurisdiction over a declaratory judgment suit would: (1) needlessly determine state law issues; (2) discourage litigants from filing declaratory actions as a means of forum shopping; (3) avoid duplicative litigation; and (4) conflict or overlap with parallel state proceedings. Gov't Employees Ins. Co. v. Dizol, 133 F.3d 1220, 1225 (9th Cir. 1998). The Ninth Circuit notes that the pertinent factors can also include whether the declaratory judgment action will settle the controversy or clarify the legal issues; whether the declaratory action is sought only for "procedural fencing," including an unfair advantage in achieving *res judicata*; whether deciding the declaratory judgment would improperly entangle the federal and state court systems; and the availability and convenience of other remedies. Id. at 1225 n.3.

9

and a state case involving the same state law issues is pending, generally the state court should decide the case and the federal court should exercise its discretion to dismiss the federal suit.[3]

The second aspect of the inquiry is fairness. The circuits' varying formulations all distinguish between legitimate and improper reasons for forum selection. Although many federal courts use terms such as "forum selection" and "anticipatory filing" to describe reasons for dismissing a federal declaratory judgment action in favor of related state court litigation, these terms are shorthand for more complex inquiries. The filing of every lawsuit requires forum selection. Federal declaratory judgment suits are routinely filed in anticipation of other litigation. The courts use pejorative terms such as "forum shopping" or "procedural fencing" to identify a narrower category of federal declaratory judgment lawsuits filed for reasons found improper and abusive, other than selecting a forum or anticipating related litigation. Merely filing a declaratory judgment action in a federal court with jurisdiction to hear it, in anticipation of state court litigation, is not in itself improper anticipatory litigation or otherwise abusive "forum shopping."

The third aspect of the analysis is efficiency. A federal district court should avoid duplicative or piecemeal litigation where possible. A federal court should be less inclined to hear a case if necessary parties are missing from the federal forum, because that leads to piecemeal litigation and duplication of effort in state and federal courts. Duplicative litigation may also raise federalism or

---

[3]    See United Capitol Ins. Co. v. Kapiloff, 155 F.3d 488, 494 (4th Cir. 1998) (looking to whether the presence of overlapping issues of fact or law might create unnecessary entanglement between the federal and state courts); Roumph, 211 F.3d at 968 (looking to "whether the use of the declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction."); Dizol, 133 F.3d at 1225 ("If there are parallel state proceedings involving the same issues and parties pending at the time the federal declaratory judgment action filed, there is a presumption that the entire suit should be heard in state court.").

10

comity concerns because of the potential for inconsistent state and federal court judgments, especially in cases involving state law issues.[4]

The Trejo factors clearly address these three categories of issues. The first Trejo factor, whether there is a pending state action in which all the matters in the controversy may be litigated, requires the court to examine comity and efficiency. The next three Trejo factors–whether the declaratory judgment plaintiff filed suit "in anticipation" of a lawsuit to be filed by the declaratory judgment defendant; whether the declaratory judgment plaintiff engaged in "forum shopping" in bringing the declaratory judgment action; and whether possible inequities exist in allowing the declaratory judgment plaintiff to gain precedence in time or to change forums–analyze whether the plaintiff is using the declaratory judgment process to gain access to a federal forum on improper or unfair grounds. Declaratory judgments are often "anticipatory," appropriately filed when there is an actual controversy that has resulted in or created a likelihood of litigation. More than one venue may be proper, requiring the plaintiff to select a forum. These Trejo labels cannot be literally applied.

The next two Trejo factors–whether the federal court is a convenient forum for the parties and witnesses and whether retaining the lawsuit would serve judicial economy–primarily address efficiency considerations. Finally, the seventh Trejo factor, whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom

---

[4] See Nautilus Ins. Co., 15 F.3d 371 (noting that speedy, inexpensive resolution of disputes; principles of federalism, comity, and efficiency; and avoiding procedural fencing were the major considerations for a district court deciding whether to hear a declaratory judgment action); Chamberlain v. Allstate Ins. Co., 931 F.2d 1361, 1367 (9th Cir. 1991)(stating that the Brillhart court founded its decision on three rationales: avoiding needless determinations of state law; preventing parties from avoiding state court proceedings by filing declaratory judgment actions in federal court; and avoiding duplicative litigation).

the parallel state suit between the same parties is pending, clearly implicates federalism and comity concerns.

**B.      Applying the <u>Trejo</u> Factors:  The Federalism Concerns**

*1.      The Absence of Pending State Cases*

A threshold issue is the impact of the absence of any pending state court action between Sherwin-Williams and the declaratory judgment defendants when the district court dismissed this case.  When a pending state court suit raises the same issues as a federal declaratory judgment action, the central question for a district court under <u>Brillhart</u> and <u>Wilton</u> is whether the controversy is better decided in state or federal court.  A district court may decline to decide "a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties."  <u>Brillhart</u>, 316 U.S. at 495, 62 S. Ct. at 1176.  <u>Wilton</u> expressly reserved the question whether the lack of a pending state court proceeding limited a district court's discretion to decide or dismiss a declaratory judgment action.  515 U.S. at 290, 115 S. Ct. at 2144 ("We do not attempt at this time to delineate the outer boundaries of that discretion in other cases, for example, cases raising issues of federal law or cases in which there are no parallel state proceedings.").  This court has not specifically addressed the effect of the absence of a pending parallel state case on a district court's discretion to dismiss a federal declaratory judgment action.  Of the circuits that have considered this question, some have held that a court retains discretion to dismiss a declaratory judgment action even if there is no pending parallel state court action, while others have stated that the district court had to decide the declaratory judgment action in the absence of a pending related state court action.

12

The Fourth Circuit and the Ninth Circuit have both held that a district court retains discretion to dismiss a declaratory action when no parallel state case is pending. In Aetna Cas. & Sur. Co., 139 F.3d 419, 423 (4th Cir. 1998), the Fourth Circuit stated that "There is no requirement that a parallel proceeding be pending in the state court before a federal court should decline to exercise jurisdiction over a declaratory judgment action. . . . To hold otherwise would in effect create a *per se* rule requiring a district court to entertain a declaratory judgment action when no state court proceeding is pending. Such a rule would be inconsistent with our long-standing belief that district courts should be afforded great latitude in determining whether to grant or deny declaratory relief." The court emphasized that "[c]learly, the existence of such a [parallel state] proceeding should be a significant factor in the district court's determination" whether to hear a declaratory action. Id. The Ninth Circuit has also held that a district court has discretion to dismiss a declaratory judgment suit even without a pending parallel state proceeding. In Golden Eagle Ins. Co. v. Travelers Cos., 103 F.3d 750, 754 (9th Cir. 1996), overruled on other grounds by Dizol, 133 F.3d 1220, the court stated that "nothing in the Declaratory Judgment Act requires a parallel state proceeding in order for the district court to exercise its discretion to decline to entertain the action. . . . [T]he absence of a parallel state proceeding is not necessarily dispositive; the potential for such a proceeding may suffice." 103 F.3d at 754.

A later Ninth Circuit case, Huth v. Hartford Ins. Co. of the Midwest, 298 F.3d 800 (9th Cir. 2002), is instructive. An insurance company filed suit in federal court seeking a declaratory judgment that a defendant was not entitled to certain benefits. The declaratory judgment defendant later filed a state court declaratory judgment suit, which was removed to federal court on diversity grounds. The two actions were consolidated in federal court, leaving no pending state cases. The declaratory

13

judgment defendant in the earlier-filed suit moved to stay the federal declaratory judgment action and to remand her later-filed case to the state court. The insurance company argued that the lack of a pending state action required the federal court to hear the declaratory judgment action. The Ninth Circuit again rejected this argument, stating that "there are other factors the district court must weigh" in deciding whether to dismiss the declaratory judgment action. 298 F.3d at 802-03. The court went on to analyze whether the district court had properly applied the Ninth Circuit's Brillhart-based discretionary test for deciding whether to hear to dismiss a declaratory judgment suit.

The Tenth and Eleventh Circuits have stated that dismissing a declaratory judgment action where there is no pending parallel state proceeding is an abuse of discretion. In Federal Reserve Bank of Atlanta v. Thomas, 220 F.3d 1235 (11th Cir. 2000), the Federal Reserve Bank sought a federal court declaratory judgment of its liability to an injured employee under a state worker's compensation statute. The injured employee brought a related case in state court and filed a motion in federal court to dismiss the federal declaratory judgment action. The federal district court dismissed the case, finding that it did not have subject matter jurisdiction and that the federal court should abstain in deference to the pending state case. The Eleventh Circuit reversed. The court found that under 12 U.S.C. § 632, federal courts have jurisdiction over all suits to which the Federal Reserve Bank is a party, even if the claims are based on state law. The court noted that the application of section 632 "effectively mean[t] that there will be no state court action to which the federal district court [could] defer," because the Federal Reserve Bank could remove any state case the injured employee might bring. The court concluded that "it is an abuse of discretion . . . to dismiss a declaratory judgment action in favor of a state court proceeding that does not exist." Id. at 1247 (citing Michigan Tech Fund v. Century Nat'l Bank of Broward, 680 F.2d 736 (11th Cir. 1982)).

14

In ARW Exploration Corp. v. Aguirre, 947 F.2d 450 (10th Cir. 1991), the Tenth Circuit also held that a district court abused its discretion when it dismissed a declaratory judgment action after a related state court proceeding had been dismissed. In that case, however, the state court had not addressed the issues raised in the federal declaratory judgment action and those claims could no longer be adjudicated in state court because the state court proceeding had been dismissed. Id. at 454. Both factors weighed in favor of the federal court's exercise of jurisdiction. The Tenth Circuit later cited with approval the Fourth Circuit's decision in Aetna Cas. & Sur. Co., stating that where simultaneously pending state actions and federal declaratory judgment actions are not perfectly parallel, the extent of similarity is a factor in the decision whether to exercise discretion to hear a declaratory action, but is not determinative. United States v. Las Cruces, 289 F.3d 1170, 1183 (10th Cir. 2002)("Aguirre firmly places the similarity of the proceedings in the process of balancing the Brillhart/Mhoon factors [of whether the declaratory judgment would serve a useful purpose and whether there is an alternative remedy which is better or more effective]."); see also Continental Cas. Co. v. Robsac, 947 F.2d 1367, 1373 (9th Cir. 1991).

This court finds that a *per se* rule requiring a district court to hear a declaratory judgment action is inconsistent with the discretionary Brillhart and Wilton standard. As the Court stated in Wilton, "the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." Id. at 286, 2142. "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." Id. at 289, 2143. The lack of a pending parallel state proceeding should not automatically require a district court

15

to decide a declaratory judgment action, just as the presence of a related state proceeding does not automatically require a district court to dismiss a federal declaratory judgment action.[5]

Even without a *per se* rule requiring a district court to hear a declaratory judgment action where there is no pending state litigation, the presence or absence of a pending parallel state proceeding is an important factor. The absence of any pending related state litigation strengthens the argument against dismissal of the federal declaratory judgment action. In this case, although the lack of a pending parallel state proceeding did not require the district judge to hear the declaratory judgment action, it is a factor that weighs strongly against dismissal.

2.      *The Presence of Federal Questions in the Declaratory Judgment Action*

Sherwin-Williams argues that the district court's failure to consider the presence of federal questions before dismissing the declaratory judgment action was an abuse of discretion. Sherwin-Williams sought a declaratory judgment that it could not be liable to a school district for lead paint abatement costs based on its membership in lead paint trade associations, on First Amendment grounds. Sherwin-Williams also sought a declaratory judgment that the Federal Hazardous Substances Act ("FHSA") preempted any claims of inadequate labeling of its products after the passage of that act. Appellees argue that although Sherwin-Williams raised these federal law issues,

-------

[5]      In Robsac, the declaratory judgment plaintiff omitted nondiverse parties to create federal jurisdiction. 947 F.2d at 1372-1373. The related pending state court suit was not perfectly parallel because it included the nondiverse parties. The district court dismissed the federal suit despite the differences between the state and federal court actions. In Aetna Cas. & Sur. Co., 139 F.3d at 423, the declaratory judgment defendant was delayed in bringing its state court case because state law required the exhaustion of state administrative remedies. The court dismissed the federal suit. A *per se* rule requiring the federal court to hear the declaratory judgment action in the absence of a pending state case might have barred the declaratory judgment defendant from filing a state court action, if the federal action was completed before the state administrative process. If there is a pending related state proceeding but it is not "parallel" because it does not involve all the same parties or issues, the federal district court properly considers the extent of similarity between the pending state court and federal court cases in deciding which court should decide the dispute, rather than relying on a *per se* rule.

16

the case primarily involved issues of state tort law. Appellees argue that a federal court faced with a declaratory judgment suit involving mixture of federal and state law issues, where the state law issues predominate, should decline to decide the case. Appellees also argue that Sherwin-Williams already had a federal forum for its federal claims and defenses, because the two suits filed in state court had been removed to federal court.[6]

Neither Brillhart nor Wilton decided whether the presence of a federal question in a declaratory judgment action limited a district court's discretion to decide or dismiss the action. 515 U.S. at 290, 115 S. Ct. at 2144. Although the presence of a federal question is not specifically identified as one of the seven Trejo factors, those factors are nonexclusive. Two circuits have held that a district court should consider the presence of federal questions when deciding whether to dismiss a declaratory judgment suit. In Verizon Communication, Inc. v. Inverizon Int'l, Inc., 295 F.3d 870 (8th Cir. 2002), plaintiff sought a declaration that its trademark did not infringe on defendant's rights under both the federal Lanham Act and state unfair competition statutes. The district court abstained in favor of a state court suit brought by the declaratory judgment defendant six weeks after the federal declaratory judgment suit was filed. The Eighth Circuit court began by noting that neither Wilton nor Brillhart involved a federal question; although the district court had properly considered the factors in Wilton and Brillhart, "but failed to mention one very significant factor not at issue in Wilton and Brillhart–the presence of a federal question that is not present in the

---

[6] The Supreme Court has held that federal question jurisdiction for a declaratory judgment suit cannot be established by raising an issue of federal law that would be an affirmative defense to a suit by the declaratory judgment defendant. See Franchise Tax Board of the State of California v. Constr. Laborers Vacation Trust for Southern California, 463 U.S. 1, 16, 103 S. Ct. 2841, 2849-50, 77 L.Ed.2d 420 (1983)(discussing Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 70 S. Ct. 876, 94 L.Ed. 1194 (1950)). Sherwin-Williams's federal law issues would be affirmative defenses in suits filed by the school districts. The jurisdictional basis of this case is diversity of the parties, not the presence of a federal question. Skelly Oil is not implicated.

17

state court action." Verizon, 295 F.3d at 873.  In Youell v. Exxon Corp., 74 F.3d 373 (2d Cir. 1996), the Second Circuit considered a district court's dismissal of a declaratory judgment action that was brought after the related state court suit.  An oil company whose tanker ran aground sued the company's insurer, in state court, alleging that the insurer breached the insurance agreement.  Sometime later, the insurer filed a declaratory judgment action in federal court, arguing that it was not liable under the insurance agreement for the loss.  The federal district court dismissed the declaratory judgment action.  The Second Circuit reversed on the ground that the issue presented in the declaratory judgment action was a "novel issue of federal admiralty law," stating that a "federal question of first impression must all but demand that the federal court hear the case."  Youell, 74 F.3d at 376 (citation omitted).  In Prudential Ins. Co. of Am. v. Doe, 140 F.3d 785, 790 (8th Cir. 1998), the presence of ERISA-based claims in a federal declaratory judgment action supported the district court's exercise of jurisdiction over that case.

Verizon and Youell are distinguishable in some respects from this case.  The Verizon court noted that the federal Lanham Act was the "gravamen" of the federal complaint.  In the present case, there are two federal law issues–the First Amendment and the federal preemption defenses–and two state tort law issues raised, each important to the outcome.  The facts of Youell raised novel issues of federal admiralty law.  In the present case,  the question of statutory preemption is not novel.  This court has already held that the FHSA preempts state law causes of action for failure to warn.  See Comeaux v. Nat'l Tea Co., 81 F.3d 42, 43 (5th Cir. 1996).  The Sixth Circuit has held in a case involving abstention under the Declaratory Judgment Act that "when state and federal courts have concurrent jurisdiction to decide preemption questions, a federal court should abstain to allow the state court to consider the preemption issues.  However . . . if the issues present facially conclusive

18

claims of federal preemption, we will not abstain, but instead will decide the preemption question." U.S. v. Kentucky, 252 F.3d 816, 826 (6th Cir. 2001) (citations omitted). State and federal courts have concurrent jurisdiction over First Amendment questions. See In re Bay Area Citizens Against Lawsuit Abuse, 982 S.W.2d 371 (Tex. 1998) (holding that requiring an advocacy group to disclose its donor lists violated the First Amendment).

The presence of federal law questions, their relationship to state law questions, the ability of the federal court to resolve state law issues, and the ability of a state court to resolve the federal law issues are important to deciding whether a state or federal court should be the one to decide the issues raised in the federal court declaratory judgment action. "The presence of federal law issues must always be a major consideration weighing against surrender" of federal jurisdiction. See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 26, 103 S. Ct. 927, 74 L.Ed.2d 765 (1983). The presence of federal law issues is especially important when there is nopending st ate court proceeding to which the federal district court can defer. If the federal law issue is important to the case, even if state law questions are also present and important to the outcome, and no state court case is pending, that weighs in favor of the federal court exercising its discretion to decide the declaratory judgment action.

This case did not involve novel questions of state law. Lead paint abatement suits are highly fact-intensive. The fourth question Sherwin-Williams identified–whether it had a duty to reimburse the various defendant counties and school districts for abatement–may not have been susceptible to resolution in the declaratory judgment suit. The legal basis of Sherwin-Williams's liability did not, however, rest on novel or undecided issues of state tort law. See United Capitol Ins. Co. v. Kapiloff, 155 F.3d 488, 494 (4th Cir. 1998). Federal courts have interpreted similar state tort law issues. See

19

Hughes v. Tobacco Inst., Inc., 278 F.3d 417 (5th Cir. 2001) (applying Texas tort law to suits against tobacco manufacturers and trade association); Jefferson v. Lead Indus. Assoc., Inc., 106 F.3d 1045, 1248 (5th Cir. 1997) ("We do not lightly abdicate our mandate to decide issues of state law while sitting in diversity."); Aguirre, 947 F.2d at 454-55 ("it has from the first been the duty of the federal courts, if their jurisdiction has been properly invoked, to decide questions of state law whenever necessary to the rendition of a judgment.") (citations omitted).

The two federal law issues raised were both important as affirmative defenses to the state law causes of action. Those defenses could have been raised in state court, and the declaratory judgment complaint raised state law issues in addition to the federal law defenses. But at the time the federal court dismissed the declaratory judgment action, there were no pending state court cases. The district court failed to consider the presence, nature, and role of the federal law issues Sherwin-Williams raised in the declaratory judgment complaint.

**C.      Applying the Trejo Factors:  The Fairness Concerns of Forum Selection**

Sherwin-Williams acknowledged in its complaint that it brought its declaratory judgment action in response to the threat of future state court abatement cases filed by the declaratory judgment defendants, making the declaratory judgment action literally "anticipatory." (Docket Entry No. 1, ¶¶ 62-67, Exs. A, B). A proper purpose of section 2201(a) is to allow potential defendants to resolve a dispute without waiting to be sued or until the statute of limitations expires. Texas Employers' Ins. Assoc. v. Jackson, 862 F.2d 491, 505 (5th Cir. 1988). The mere fact that a declaratory judgment action is brought in anticipation of other suits does not require dismissal of the declaratory judgment action by the federal court.

20

Mission Ins. Co. v. Puritan Fashions Corp., 706 F.2d 599 (5th Cir. 1983), is often cited for the proposition that a declaratory judgment action brought in "anticipation of litigation" should be dismissed. Plaintiff brought a declaratory judgment action in Texas federal court before the defendant could file suit in California state court. This court upheld the district court's dismissal of the declaratory judgment action, citing the pending parallel California case and "the inequity of permitting [the declaratory judgment plaintiff] to gain precedence in time and forum by its conduct." 706 F.2d at 602. Because California and Texas had different choice of law rules, the difference in forum changed the law that applied. The substantive provisions of California and Texas law differed significantly. Id. at 602 n.3. The Mission Ins. Co. court concluded that the declaratory judgment plaintiff used the federal declaratory judgment statute and the defendant's inability to file an earlier state court suit for the sole purpose of controlling the state law that would apply. The Mission Ins. Co. court cited this as improper "procedural fencing" undermining "the wholesome purposes" of declaratory actions. Id. at 602 n.3.[7]

Declaratory judgment actions often involve the permissible selection of a federal forum over an available state forum, based on the anticipation that a state court suit will be filed. In Kapiloff, 155

---

[7]    Courts have found impermissible "procedural fencing" when the declaratory judgment plaintiff brings the declaratory judgment action before the declaratory defendant is legally able to bring a state action. In Aetna Cas. & Sur. Co., 139 F.3d at 423, the declaratory judgment defendant was unable to bring a state action before exhausting state administrative remedies. The declaratory judgment plaintiff filed suit in federal court while the state administrative proceedings were still pending. The federal district court dismissed the declaratory judgment action; the Fourth Circuit affirmed, stating that absent settlement, the state court suit was inevitable. To allow the declaratory judgment action to proceed to completion, possibly before state law permitted the state court suit to be filed, was impermissible "procedural fencing." Id. Courts have also found impermissible forum manipulation if the declaratory judgment plaintiff sues only diverse defendants, but the underlying state court action is not removable because nondiverse defendants are properly sued. In Robsac, 947 F.2d at 1373, an insurer sued in federal court seeking a declaration that a certain claim was not covered. The declaratory judgment defendant had filed suit in state court against the insurer and several other defendants, some of which were nondiverse. The Ninth Circuit reasoned that to allow the federal declaratory judgment action to go forward would impermissibly "sanction partial removal in all but name." Id.; see also 28 U.S.C. § 1441(b).

F.3d at 494, the plaintiff insurance company sought a declaratory judgment in federal court that it was not liable for certain losses suffered by the defendant. The defendant subsequently brought a similar action in state court. The federal district court declined to dismiss and the Fourth Circuit affirmed. The court noted that the declaratory judgment plaintiff properly invoked standard diversity jurisdiction to resolve issues traditionally resolved in declaratory judgment actions. Despite the fact that plaintiff may have predicted that there would be a related suit filed in state court (making the federal suit "anticipatory"), "without more, we cannot say that [the declaratory plaintiff's] action is an instance of forum-shopping instead of a reasonable assertion of its rights under the declaratory judgment statute and diversity jurisdiction." Id. The Ninth Circuit similarly concluded that even if the insurer anticipated a state court declaratory judgment coverage action, "we know of no authority for the proposition that an insurer is barred from invoking diversity jurisdiction to bring a declaratory judgment action against an insured on an issue of coverage." Dizol, 133 F.3d at 1225 (quoting Aetna Cas. & Ins. Co. v. Merritt, 974 F.2d 1196, 1199 (9th Cir. 1992)).

Sherwin-Williams filed the federal suit in anticipation that school districts and counties would file a number of similar suits in Mississippi state courts. Although the two suits that school districts had filed in state courts had been removed based on fraudulent joinder, there was no assurance that all future cases could successfully be removed. Compare Kapiloff, 155 F.3d at 494 (where there was no way to know that the declaratory judgment defendants would name nondiverse parties in the related subsequent state court action, making it unremovable, court did not abuse its discretion by declining to dismiss the federal declaratory judgment action), with Robsac, 947 F.2d at 1372-73 (where nondiverse defendants were present in the state action, federal district court should dismiss

the declaratory judgment action to avoid piecemeal litigation and to prevent *de facto* partial removal of the state court case).[8]

This court's ruling in Travelers Ins. Co. v. Louisiana Farm Bureau Fed'n, 996 F.2d 774 (5th Cir. 1993) supports Sherwin-Williams's argument that it was not engaged in impermissible procedural fencing. Travelers involved an insurance policy issued to numerous members of a farming organization. When the declaratory judgment plaintiff sought to terminate certain benefits in the policy, many policy enrollees retained counsel and threatened litigation. Three plaintiffs filed separate state court suits. Faced with the prospect of further similar lawsuits, the insurer filed a declaratory judgment action in federal court. This court held that plaintiff was not engaged in impermissible forum shopping:

> Travelers explained in its original complaint that it brought suit so that one pertinent issue, which involved seventeen [members of defendant farming organization] who could have brought suit in multitudinous forums in Louisiana and Mississippi, could be resolved consistently in one, rather than multiple, forums. Such a goal, unlike that of changing forums or subverting the real plaintiff's advantage in state court, is entirely consistent with the purposes of the Declaratory Judgment Act.

Travelers, 996 F.2d at 777. In this case, Sherwin-Williams alleges that the declaratory judgment defendants had announced their intention to file and pursue lawsuits in a number of state courts in Mississippi. Sherwin-Williams alleged in its declaratory judgment complaint that it sought a resolution of certain issues of federal and state law that would be common to the threatened lawsuits, to avoid the repetitive litigation it would encounter if the state court suits were filed, as anticipated.

---

[8] Appellees also argue that instead of filing its declaratory judgment suit, Sherwin-Williams could have waited for the state court lawsuits to be filed, remove those suits, and seek consolidation. This strategy defeats the purpose of declaratory judgment actions, which is to resolve outstanding controversies without forcing a putative defendant to wait to see if it will be subjected to suit. As noted, there was no assurance that all the anticipated state court suits could be removed.

23

(Complaint, ¶¶ 68-69). Travelers supports the use of the Declaratory Judgment Act to resolve issues pertinent to the suits in "one, rather than multiple, forums." 996 F.2d at 777.

The district court justified its finding that Sherwin-Williams engaged in impermissible forum shopping by stating that Sherwin-Williams "seeks declaratory relief against Mississippi counties that are frequently mentioned as being counties in which large jury verdicts are awarded" and noting that "federal forums in the State of Mississippi are sought by some manufacturers in an attempt to avoid the state court system." These factors are not mentioned in the complaint or in the parties' briefs on the motion to dismiss. Those factors do not remove the legitimate reason, recognized by this court in Travelers, for Sherwin-Williams's choice of federal forum for this declaratory judgment suit. See Travelers, 996 F.2d at 776-77, 779 (avoiding multiple lawsuits in multiple courts is a legitimate reason for bringing federal declaratory judgment action). The second reason the district court gave in support of its finding of forum shopping, the fact that "federal forums are sought by some manufacturers in an attempt to avoid the state court system," does not necessarily demonstrate impermissible forum selection when the declaratory judgment out-of-state plaintiff invokes diversity. Rather, it states the traditional justification for diversity jurisdiction, to protect out-of-state defendants. See Chick Kam Choo v. Exxon Corp., 764 F.2d 1148, 1153 n.3 (5th Cir. 1985).

The selection of the federal forum in this case did not change the law that would apply; Sherwin-Williams brought the suit in Mississippi federal court, against Mississippi defendants. Mississippi law would apply to the claims between the parties, whether in state or federal court.[9]

---

[9] Sherwin-Williams seeks a declaratory judgment that it cannot be held liable for damages caused by lead paint used in the declaratory defendants' buildings unless the declaratory defendants can identify the paint as having been made by Sherwin-Williams. The Fifth Circuit has interpreted the case law of other states in finding that to establish a manufacturer's liability, a plaintiff must identify the manufacturer of the allegedly defective product. See Aymond v. Texaco, 554 F.2d 206, 210-11 (5th Cir. 1977)(interpreting Louisiana common law).

24

There is no evidence that Sherwin-Williams brought its declaratory judgment action in search of more favorable law. There is also no evidence that the declaratory judgment defendants had been restricted from filing state court actions, averting the possibility that Sherwin-Williams was engaged in a "race to *res judicata*." Compare Aetna Cas. & Sur. Co., 139 F.3d at 423 (declaratory defendant barred from filing state court action because it had not exhausted state administrative remedies).

The record does not support a finding that Sherwin-Williams engaged in impermissible forum shopping by filing this declaratory judgment suit.

### D. Applying the Trejo Factors: Efficiency

The district court concluded that two of the Trejo factors measuring efficiency for the court and convenience for the parties weighed in favor of dismissal. As to the first factor, the court found that retaining the federal declaratory judgment suit would not necessarily serve judicial economy because the declaratory judgment defendants could still file state court suits, particularly against other lead paint manufacturers. On the other hand, resolution of the declaratory judgment action Sherwin-Williams filed would at a minimum decide issues critical to its role in future suits. As in Travelers, efficiencies may result from litigating issues pertinent to multiple potential claims against a defendant in one federal forum, as opposed to a number of state courts.[10] Some or all of the other paint manufacturers and sellers may join this declaratory action if the district court on remand decides to exercise its discretion to hear the case. See Kapiloff, 155 F.3d at 494 ("[J]oinder of any relevant parties from the state action would more or less be an inevitability if the federal action proceeded.").

---

[10] Declaratory judgments are available in Mississippi. Miss. R. Civ. P. 57. The fact that declaratory judgments are available in state court does not justify dismissal of a federal declaratory judgment action. See Agora Syndicate, Inc. v. Robinson Janitorial Specialists, Inc., 149 F.3d 371, 373-74 (5th Cir. 1998).

25

The fact that other state suits might be filed is part of the reason that Sherwin-Williams sought a single forum to resolve important issues.[11]

The district court found that if it decided to hear the declaratory judgment action, some of the defendants would be inconvenienced. All but one of the named declaratory judgment defendants is located in the Southern District of Mississippi, where the federal declaratory judgment action was filed. One defendant county is in the Northern District of Mississippi, but according to the record, not a burdensome distance from the federal courthouse in Jackson, Mississippi.[12] The fact that it would not be as convenient for all the declaratory judgment defendants to litigate in federal district court as it would be for them to litigate in the nearest state courthouse does not mean that it is unduly burdensome for them to do so. See, e.g., Dow Agrosciences v. Bates, 332 F.3d 323, 328 (5th Cir. 2003) (finding that the declaratory judgment defendants, twenty-nine farmers of whom over half lived in the Abilene, Amarillo, Fort Worth, San Angelo, and Wichita Falls Divisions of the Northern District of Texas, were not inconvenienced by trial of declaratory judgment suit in Lubbock Division of Northern District of Texas);[13] Evanston Ins. Co. v. Jimco, Inc., 844 F.2d 1185, 1191-93 (5th Cir.

---

[11] Appellees contend that the efficiency rationale is defeated by the district court's inability to enjoin future suits they or other counties and school districts may bring, because Sherwin-Williams is not entitled to an "injunction against the world." The Anti-Injunction Act applies whenever a state suit is pending, regardless of when that suit was filed. *Royal Ins. Co. v. Quinn-L Capital Corp.*, 3 F.3d 877, 885 (5th Cir. 1993). There were no pending state suits when the federal suit was dismissed. Even if there were pending state court suits which the district court could not enjoin, the district court would still be authorized to review the merits of Sherwin-Williams's declaratory judgment action. See Travelers, 996 F.2d at 778. Judicial economy could support such a review, because the district court would resolve in one forum and proceeding issues of common application. Id. at 779.

[12] Sherwin-Williams states that Bolivar County is 58 miles from Holmes County, where this case is being heard, and that the major city in Bolivar County, Cleveland, is 121 miles from Jackson, located in the Southern District of Mississippi. (Appellant's Brief at 39).

[13] The distance between Abilene and Lubbock is approximately 140 miles; between Amarillo and Lubbock, 115 miles; between Fort Worth and Lubbock, 260 miles; between San Angelo and Lubbock, 160 miles; and between Wichita Falls and Lubbock, 190 miles. The distance between Cleveland, Mississippi, the largest city in Bolivar County, and Jackson, Mississippi, is approximately 105 miles. See NAT'L GEOGRAPHIC ATLAS of the WORLD, 7th ed.

26

1988) (in a case in which several businesses in eleven different locations in Louisiana sued an insurer in multiple state court suits, and insurer filed federal declaratory action against the state plaintiffs, New Orleans was a "central geographic point" among the Louisiana declaratory judgment defendants and litigation there did not pose major logistical difficulties justifying the federal court's abstaining from the case); cf. Travelers Indem. Co. v. Madonna, 914 F.2d 1364, 1368 (9th Cir. 1990) (200 mile distance between defendant and courthouse not so great as to warrant abstention under Colorado River doctrine). All but one of the declaratory judgment defendants reside in the Southern District of Mississippi and the one in the Northern District is not far away. Any marginal inconvenience is outweighed by the other factors that weigh in favor of proceeding with the federal declaratory judgment suit.

### III. Conclusion

The application of the Trejo factors, analyzed in light of the overarching Brillhart principles, does not support the district court's dismissal of this case. Federalism and comity concerns weigh in favor of the federal court exercising its discretion to decide this case. There was no pending parallel state proceeding and the declaratory judgment complaint raised federal questions, making it appropriate for federal court. Considerations of procedural fairness do not weigh in favor of dismissal; Sherwin-Williams was not unfairly engaging in impermissible forum shopping by bringing this declaratory judgment action. Rather, Sherwin-Williams properly invoked diversity jurisdiction to litigate in a single forum issues that would arise in a number of suits it anticipated facing in different state courts, a reason consistent with the purpose of the Declaratory Judgment Act. See Travelers, 996 F.2d at 776-77. Efficiency considerations do not weigh in favor of dismissal. See

_____

(1999).

<u>Travelers</u>, 996 F.2d at 779; <u>Youell</u>, 74 F.3d at 376.  We REVERSE and REMAND for proceedings consistent with this opinion.