**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
———

No. 13-2880
———


ROX-ANN REIFER, assignee of Donald Russo, Esquire

v.

WESTPORT INSURANCE CORPORATION,
Appellant


———

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(4-12-cv-00533)
District Judge: Honorable Matthew W. Brann
———

Argued on March 25, 2014

Before: FUENTES, GREENBERG and VAN ANTWERPEN,
*Circuit Judges*

(Filed: April 29, 2014)

Robert P. Conlon, Esq.
Christopher A. Wadley, Esq. [ARGUED]
Walker Wilcox Matousek
One North Franklin Street
Suite 3200
Chicago, IL 60606

Mark T. Sheridan, Esq.
Margolis Edelstein
220 Penn Avenue
Suite 305
Scranton, PA 18503
        *Counsel for Appellant*

Deborah J. Dewart, Esq.
620 East Sabiston Drive
Swansboro, NC 28584

Chester F. Dudick, Jr., Esq.
1043 Wyoming Avenue
Forty Fort, PA 18704

David W. Knauer, Esq. [ARGUED]
Knauer & Associates
1542 Lookout Springs Drive
Colorado Springs, CO 80921
        *Counsel for Appellee*

_____

OPINION
_____

VAN ANTWERPEN, *Circuit Judge*.

Appellant Westport Insurance Corporation ("Westport") appeals the District Court for the Middle District of Pennsylvania's decision declining to exercise jurisdiction over the instant case and its Order dismissing the case without prejudice and remanding it to the Court of Common Pleas of Lackawanna County, Pennsylvania. *Reifer v. Westport Ins. Corp.*, 943 F. Supp. 2d 506, 512 (M.D. Pa. 2013). It also appeals the District Court's denial of its motion for reconsideration. *Reifer v. Westport Ins. Corp.*, No. 4:12-CV-0533, 2013 WL 2650275, at *1 (M.D. Pa. June 12, 2013). For the reasons that follow, we will affirm the decisions of the District Court declining jurisdiction and denying reconsideration.

## I.     BACKGROUND

Rox-Ann Reifer's ("Reifer") Complaint avers the following: Reifer suffered a worker's compensation injury during the course of her employment at Intermediate Unit-20 (IU-20) where she provided special education to students. Her injuries prevented her from returning to work, and she retained Donald P. Russo, Esquire ("Russo") out of concern that IU-20 may bring disciplinary proceedings against her. At the time she retained Russo, he carried legal malpractice insurance with Westport and was in full compliance with the Pennsylvania Rules of Professional Conduct as they pertained to insurance coverage. When IU-20 initiated disciplinary proceedings against Reifer, Russo failed to appear at the hearing. When IU-20 terminated her in accord with the hearing master's recommendation, Russo also failed to appeal. Russo then filed a federal lawsuit alleging violation of Reifer's employment rights, which he lost for failure to exhaust her state remedies. Finally, when Reifer sought

3

alternate employment, she asked Russo how to answer an employment application question as to whether she had ever been terminated. Russo advised her to answer in the negative. Reifer was terminated and subjected to public discipline for falsely answering the employment application.

On March 18, 2008, Reifer commenced a malpractice claim against Russo in state court by Praecipe for Writ of Summons,[1] which was served upon him. At the time of service, Russo carried a "claims-made" policy with Westport, which only covered losses claimed by him during the policy period or within 60 days of the policy's expiration. Despite this, Russo failed to inform Westport of the action. That August, Russo's policy lapsed and he failed to secure a replacement policy. Four months later, on December 29, 2008, Reifer filed a Complaint that was served upon Russo. Russo only then notified Westport of the claim against him.

Westport refused to defend Russo. Eventually, Russo admitted liability but the issue of damages was tried in state court. The jury awarded Reifer a judgment of $4,251,516.00 plus delay damages. Russo assigned to Reifer any rights he might have had under his legal malpractice insurance policy with Westport. On March 1, 2012, Reifer, as Russo's assignee, filed the instant action against Westport for a declaratory judgment pursuant to Pennsylvania's Declaratory Judgments Act, 42 Pa.C.S.A. § 7531, *et seq.* in the Court of Common Pleas of Lackawanna County, Pennsylvania.

---

[1] Pennsylvania allows a suit to be commenced by filing with the prothonotary a praecipe for a writ of summons or a complaint. Pa.R.C.P. No. 1007.

In her declaratory judgment Complaint, Reifer argued that, under Pennsylvania case law and Pennsylvania Rule of Professional Conduct 1.4(c), Westport was required to show it was prejudiced by Russo's failure to notify it of her claim. Because Westport did not do so, Reifer argued it owed Russo a duty to defend and indemnify and requested a declaratory judgment that Westport "must pay" her judgment. (Compl. ¶¶ 36–59.)

Reifer also filed another suit by Praecipe for Writ of Summons under a different case number. The summons was served but no complaint was filed.

On March 23, 2012, Westport removed the cases to federal court; no proceedings remained in state court. Westport moved to dismiss Reifer's action on the merits. Reifer opposed the motion and Westport replied. In response, Reifer moved to amend her Complaint, which Westport opposed. Neither party argued that the District Court should decline its discretionary jurisdiction under the Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201–2202. On October 12, 2012, a United States Magistrate Judge considered the case on its merits and filed a 39-page report and recommendation advising that Reifer's Motion to Amend should be denied and Westport's Motion to Dismiss should be granted. *Reifer v. Westport Ins. Corp.*, No. 4:CV-12-0533, 2012 WL 7998229, at *20 (M.D. Pa. Oct. 12, 2012). Reifer objected and Westport responded.

On May 1, 2012, the District Court *sua sponte* declined to exercise jurisdiction over the matter. *Reifer*, 943 F. Supp. 2d at 508. It rejected the Magistrate's report and recommendation, dismissed the case without prejudice, and

5

remanded it to the Court of Common Pleas of Lackawanna County, Pennsylvania. *Id.* Westport filed a Motion for Reconsideration, which the District Court denied. *Reifer*, 2013 WL 2650275, at \*1. Westport appeals both decisions.

## II.    JURISDICTION

The District Court had jurisdiction pursuant to 28 U.S.C. § 1332(a). Although it is uncontested by the parties, we have an independent obligation to assure ourselves of our jurisdiction. *E.g.*, *Kendall v. Daily News Publ'g Co.*, 716 F.3d 82, 86 (3d Cir. 2013).

We have jurisdiction to review "final decisions" of district courts under 28 U.S.C. § 1291. Whether a district court's discretionary remand under the DJA is an appealable "final decision" under § 1291 is a matter of first impression.[2] We believe that a remand order entered pursuant to the DJA is an appealable final decision because it is functionally indistinguishable from the remand order found appealable in *Quackenbush v. Allstate Insurance Co.*, 517 U.S. 706, 713–15

---

[2] In *Henglein v. Colt Industries Operating Corp.*, we stated that "[o]nce a judgment disposing of all issues on which the parties sought a declaration is entered by a court, the case is ripe for appeal. Even if the court decides in its discretion that it will not entertain the case in any aspect whatsoever, that ruling is subject to appeal." 260 F.3d 201, 210 (3d Cir. 2001) (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995)). Despite its broad language, *Henglein* did not deal with a remand, *id.* at 206, which we believe warrants particular consideration.

6

(1996). *See Snodgrass v. Provident Life & Accident Ins. Co.*, 147 F.3d 1163, 1165–66 (9th Cir. 1998).

As a threshold matter, we note that a remand under the DJA implicates neither a lack of subject matter jurisdiction nor a defect in removal procedure. Thus, 28 U.S.C. § 1447(d) does not preclude our review. *See Quackenbush*, 517 U.S. at 712 (holding that, because § 1447(d) must be read *in pari materia* with § 1447(c), its proscription against appellate review is limited to those circumstances implicated by § 1447(c)); *see also In re U.S. Healthcare*, 159 F.3d 142, 146 (3d Cir. 1998).

In *Quackenbush*, the Supreme Court held that an appeal is the appropriate procedural mechanism to review a remand order made pursuant to *Burford* abstention where the circumstances satisfy either of the alternate holdings of *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1 (1983). *Quackenbush*, 517 U.S. at 712–15. First, a remand order is appealable where it effectively puts the litigants out of court so that "its effect is 'precisely to surrender jurisdiction of a federal suit to a state court.'" *Id.* at 714 (quoting *Moses H. Cone*, 460 U.S. at 10 n.11). This effect is acutely felt in the context of remand orders whereby "the district court disassociates itself from the case entirely, retaining nothing of the matter on [its] docket." *Id.*

Second, a remand order under the *Burford* abstention doctrine is appealable pursuant to the collateral order doctrine because it "conclusively determines an issue that is separate from the merits, namely, the question whether the federal court should decline to exercise its jurisdiction in the interest of comity and federalism." *Id.* Additionally, such an order is

7

"sufficiently important" to justify immediate appeal. *Id.* This importance arises, in part, from the fact that a remand order is otherwise effectively unreviewable. *Id.*

In *Snodgrass*, the Ninth Circuit held that a remand pursuant to the DJA satisfied both of these tests and was "functionally indistinguishable" from the remand order addressed in *Quackenbush*. 147 F.3d at 1167. We agree. The District Court's remand order surrenders to the state court jurisdiction to declare whether Westport's policy covered Reifer's legal malpractice claim against Russo. It denies Reifer and Westport access to the federal forum, placing them "effectively out of court." *Quackenbush*, 517 U.S. at 714 (quoting *Moses H. Cone*, 460 U.S. at 10 n.11). Additionally, it "conclusively determines an issue that is separate from the merits," namely, whether the District Court should decline to exercise jurisdiction over Reifer's declaratory judgment action. *Id.* This decision is not reviewable on appeal from any final judgment eventually entered by the state court. Finally, we agree with our sister circuit that the propriety of a district court's discretionary decision to decline to exercise jurisdiction under the DJA "is too important to be denied review." *Snodgrass*, 147 F.3d at 1166; *see, e.g.*, *State Auto Ins. Cos. v. Summy*, 234 F.3d 131, 136 (3d Cir. 2000) (emphasizing the duties of district courts in deciding whether to exercise jurisdiction over insurance coverage cases under the DJA). Because it is "functionally indistinguishable" from the remand order found appealable in *Quackenbush*, we hold that a remand order pursuant to a decision to decline jurisdiction under the DJA is a "final decision" under § 1291 and reviewable on appeal.

## III.   DISCUSSION

Westport presents two main issues for consideration: (1) whether the DJA, the authority by which the District Court declined to exercise jurisdiction, applies; and (2) if so, whether the District Court abused its discretion in declining jurisdiction.

A.     *The DJA applies.*[3]

Under the DJA, courts "*may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added).[4] The Supreme Court has long held that this confers discretionary, rather than compulsory, jurisdiction upon federal courts. *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942). This is an exception to the general rule that "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Quackenbush*, 517 U.S. at 716 (citing *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 821 (1976)).

---

[3] We review the underlying legal basis for remand under a *de novo* standard. *Lazorko v. Pa. Hosp.*, 237 F.3d 242, 247 (3d Cir. 2000).

[4] Although Reifer's declaratory judgment claim was originally brought in state court under Pennsylvania law, the question of whether to exercise federal jurisdiction to adjudicate the controversy became a procedural issue under federal law. *See, e.g.*, *Golden Eagle Ins. Co. v. Travelers Cos.*, 103 F.3d 750, 753 (9th Cir. 1996), *overruled on other grounds by Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220 (9th Cir. 1998) (en banc); *accord Fischer & Porter Co. v. Moorco Int'l Inc.*, 869 F. Supp. 323, 326 (E.D. Pa. 1994).

Westport claims that the District Court did not have discretion to decline jurisdiction because the requirements for diversity jurisdiction were satisfied and the DJA did not apply. It argues that, although Reifer's claim was couched in terms of a declaratory judgment, it was in reality a suit which sought a judgment compelling Westport to pay money damages.[5] To Westport, the timing of the state court judgment

---

[5] In a few sentences, Westport advances an alternate argument based upon Reifer's other suit, brought by Praecipe for Writ of Summons. It argues that Reifer's other suit constituted a claim for damages and that this claim for legal relief triggered the district court's "virtually unflagging obligation" to exercise its jurisdiction. *Colo. River*, 424 U.S. at 817. Thus, Westport argues, even if Reifer's primary claim was a declaratory judgment action, "there was, in fact, a claim for damages before the district court." (Brief of the Appellant ("Appellant Br.") at 22.) In support of its claim, Westport directs our attention to the Civil Cover Sheet attending Reifer's praecipe. The Civil Cover Sheet indicates that money damages are requested, that Reifer's action sounds in contract, and describes the action thus: "Assignment of cause of action for payment of verdict."

We understand Westport to argue that the District Court had before it a "mixed claim" for declaratory and legal relief. We have never ruled on the legal standard a district court must apply when addressing whether it may decline jurisdiction when both declaratory and legal relief are claimed. *See, e.g.*, *Hartford Ins. Co. of S.E. v. John J.*, 848 F. Supp. 2d 506, 510 (M.D. Pa. 2012). Moreover, our sister circuits are "sharply divided" and advance four different standards. *See, e.g.*, *Perelman v. Perelman*, 688 F. Supp. 2d

10

367, 374–75, n.3 (E.D. Pa. 2010) (analyzing circuit split). Our district courts have also embraced competing approaches. *Compare id.* at 367–77 (adopting "independent claim" test)*, with Hartford Ins. Co.*, 848 F. Supp. 2d at 512 (disagreeing with *Perelman* and adopting "heart of the action" test)*.* Westport does not mention these competing approaches nor urge us which to adopt.

We need not, however, resolve this issue because we find that Westport has failed to show that Reifer's praecipe alone raises Reifer's action to the level of a "mixed claim." Reifer's praecipe was filed under a different case number than her declaratory judgment action. It says nothing of the underlying claim other than that it is a "Civil Action." Reifer did not file a complaint in this case and Westport did not compel her to do so. *See* Pa.R.C.P. No. 1037(a). Neither the Magistrate Judge nor the District Court ever mentioned the praecipe. Indeed, it is not even clear that Westport was able to remove it to federal court. *See Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 223 (3d Cir. 2005); *accord Gervel v. L & J Talent*, 805 F. Supp. 308, 308–09 (E.D. Pa. 1992). Further, we are not persuaded by Westport's heavy reliance on Reifer's Civil Cover Sheet. *See, e.g.*, *Polanco v. Coneqtec Universal*, 474 F. Supp. 2d 735, 736 n.1 (E.D. Pa. 2007) (citing Pa.R.C.P. Nos. 1007, 1017) (explaining that a Civil Cover Sheet is "not a writ of summons, praecipe, or complaint[,] . . . cannot be used to commence an action under Pennsylvania law[,] and is not deemed a pleading under Pennsylvania law"). Under these circumstances, Westport has failed to show that Reifer's other suit divests the District Court of its DJA discretion, especially where we understand that the purpose of the other suit (as explained at oral argument) was merely to protect a future money judgment

11

establishing Russo's liability is crucial. Because Russo's liability had already been established, the declaratory judgment action was not prospective. Rather, Reifer's complaint simply sought a declaratory judgment that Westport "must pay" the damages already awarded to her. (*See* Compl. ¶¶ 82–88.) Because "[t]here is no meaningful difference between a complaint seeking a declaration that a defendant 'must pay' damages and a complaint seeking to recover such damages," Westport contends Reifer's claim is legal in nature, not declaratory. (Brief of the Appellant ("Appellant Br.") at 20–21.) Thus, Westport argues, the District Court had no discretion to decline jurisdiction.[6]

The District Court rejected this argument, finding that the instant case was

> precisely a declaratory judgment action. Reifer wants the [District Court] to declare that Donald P. Russo, Esquire was covered by the malpractice insurance policy issued by Westport at the time he committed legal malpractice. Westport wants the undersigned to

claim from running afoul of the statute of limitations if Reifer prevailed on the declaratory judgment claim.

[6] Westport warns that permitting plaintiffs to so stylize their complaints would "make a mockery of diversity jurisdiction" by permitting local plaintiffs to deprive out-of-state defendants of the right to a federal forum they otherwise would have when legal relief was sought. (Appellant Br. at 21.) It argues that plaintiffs could plead "any ordinary claim for damages in terms of seeking declaratory relief." (*Id.*) Thus, courts must focus on the claim's substance, rather than its form, when deciding if the DJA applies.

12

declare that Russo was not covered by the policy issued at that time. The award of damages has, of course, already been rendered by the Court of Common Pleas of Northampton County. The [District Court] is not being asked to award damages against Westport; [it] is instead merely being asked to determine if Russo was or was not covered under his legal malpractice insurance policy at the time he committed legal malpractice.

*Reifer*, 2013 WL 2650275, at *2.[7]

We agree that the DJA applies because in reality Reifer sought only a declaratory judgment. While Reifer's Complaint admittedly uses the words "must pay," in substance it requests a declaration that Russo was covered by the policy. Specifically, Reifer sought a declaration that, because Westport never showed that it was prejudiced by Russo's late notice, Russo was covered by Westport's policy at the time he reported Reifer's claim. As the District Court noted, it was not being asked to award damages; both parties

---

[7] The District Court's characterization of Reifer's declaratory judgment is not entirely correct. There is no dispute that the policy was in effect and that Russo was covered at the time he committed legal malpractice. Under the claims-made policy that governed the relationship, the dispositive question before the District Court was not whether Russo was covered at the time he committed malpractice, but whether he reported the claim to Westport within the appropriate time period. Accordingly, what is disputed is whether Russo was covered by Westport's policy at the time he reported Reifer's claim.

13

well knew that damages had already been awarded in state court. *Id.* Westport's own filings indicate that the primary question was one of coverage, (Appendix ("App.") at 97 ("This is an insurance action in which Rox-Ann Reifer seeks coverage for a legal malpractice claim . . . . Ms. Reifer's claim is not covered . . . .")), a common issue in declaratory judgments. *See Allstate Ins. Co. v. Seelye*, 198 F. Supp. 2d 629, 631 (W.D. Pa. 2002) (noting the "all too common case" of insurance companies using diversity jurisdiction to seek declarations on purely state law matters). Additionally, Reifer's status as Russo's assignee undercuts Westport's argument. In Westport's own words, "it cannot be disputed that Ms. Reifer 'stands in Mr. Russo's shoes' *for purposes of pursuing coverage* under the policy." (App. at 188 (emphasis added).)

Moreover, simply because additional recovery would likely flow to Reifer as a result of a declaration in her favor does not preclude applicability of the DJA. Courts "may" grant declaratory judgments "whether or not further relief is or could be sought." 28 U.S.C. § 2201(a); *see also id.* § 2202 ("Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."); *United States v. Pa., Dep't of Envtl. Res.*, 923 F.2d 1071, 1075 (3d Cir. 1991) (citing Fed. R. Civ. P. 57) (noting that a district court may exercise jurisdiction over declaratory judgment action where "another adequate remedy exists"); *Alexander & Alexander, Inc. v. Van Impe*, 787 F.2d 163, 166 (3d Cir. 1986) (finding that prevailing party in a declaratory judgment may seek "further relief," including damages). Westport cites no authority for the broad conclusion that a district court may

never exercise its discretionary jurisdiction under the DJA simply because another action resulted in monetary damages, the disposition of which will be affected by the court's declaration.[8] It may, in some circumstances, be possible for a party's claim for legal relief to masquerade as a declaratory judgment, improperly activating discretionary jurisdiction. However, we do not believe that this is the case with the matter at hand.

### B. The District Court did not abuse its discretion.

[8] We note that a potential unintended consequence of such a rule could be to permit an insurer, but not an insured, to bring a declaratory judgment action in precisely the same circumstances. *Wilton* is illustrative, although it did not address the instant issue. There, an insurer refused to defend or indemnify its insured. *Wilton*, 515 U.S. at 279. A jury awarded over $100 million against the insured. *Id.* at 280. *After* the verdict, *the insurer* sought a declaration that its policy did not cover the insured's liability in that case. *Id.* Were the insurer to lose the declaratory judgment action, monetary relief would presumably flow to the insured. But no one could, of course, claim that the insurer's declaratory judgment action was really a claim for damages. Thus, under Westport's rule, the DJA would apply and the district court could exercise discretion. However, if the *insured* were to bring the declaratory action and win, monetary relief would also presumably flow to the insured. Westport's approach would require interpreting this as a claim for damages and preclude application of the DJA. Despite being identical to the previous scenario (despite which party brings the claim), the district court would be unable to exercise its DJA discretion. Such an approach would be unfair.

15

The instant case raises the question of the "outer boundar[y]" of a district court's discretion under the DJA, specifically whether a district court may decline jurisdiction over a declaratory judgment action when "there are no parallel state proceedings." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 290 (1995).[9] It also presents an opportunity to help clarify this area of the law as many of our sister circuits have done. We ultimately conclude that declining to exercise jurisdiction over the instant case was not an abuse of discretion by the District Court because Reifer raises issues of state law peculiarly within the purview of the Pennsylvania court system which are better decided by that system.

*1.*

As a threshold matter, we must first address the appropriate standard of review, which the parties dispute. Invoking our holding in *Exxon Corp. v. FTC*, 588 F.2d 895, 900 (3d Cir. 1978), Westport argues for heightened abuse of discretion review. There, we noted that due to our traditionally "liberal interpretation" of the DJA, "the ambit of the district court's discretion is somewhat circumscribed and the range of our review is correspondingly enlarged." *Id.* (citing *Simmonds Aerocessories v. Elastic Stop Nut Corp. of Am.*, 257 F.2d 485, 489 (3d Cir. 1958); *Dewey & Almy Chem. Co. v. Am. Anode, Inc.*, 137 F.2d 68, 70 (3d Cir. 1943)). We concluded that a district court's decision to decline jurisdiction "will be given closer scrutiny than normally given

---

[9] The Supreme Court has described a "parallel" proceeding as "another proceeding . . . pending in a state court in which all the matters in controversy between the parties could be fully adjudicated." *Brillhart*, 316 U.S. at 495.

16

on an 'abuse of discretion' review." *Id.* We have since described this standard as "heightened scrutiny," *Cost Control Mktg. & Mgmt., Inc. v. Pierce*, 848 F.2d 47, 49 (3d Cir. 1988), and as a "caveat" to traditional abuse of discretion review, *Pa., Dep't of Envtl. Res.*, 923 F.2d at 1073.

Subsequently, the Supreme Court in *Wilton* held that "district courts' decisions about the propriety of hearing declaratory judgment actions . . . should be reviewed for abuse of discretion." 515 U.S. at 289–90. In rejecting *de novo* appellate review of district courts' exercise of DJA discretion, the Court reasoned it to be "more consistent with the statute to vest district courts with discretion in the first instance, because facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution, are peculiarly within their grasp." *Id.* at 289. Since *Wilton*, this Court has applied *Wilton*'s teachings rather than the standard articulated in *Exxon Corp. See, e.g.*, *Summy*, 234 F.3d at 134.

The "closer scrutiny" required by *Exxon Corp.* and our subsequent case law expanding upon this "caveat" are irreconcilable with the Supreme Court's emphasis on traditional abuse of discretion review. To the extent that *Exxon Corp.* requires us to apply a standard of review more stringent than that articulated by the Supreme Court, we must deem it as overruled.[10] We review a district court's decision

---

[10] We recognize the position taken by the First Circuit (and advanced by Westport at argument) that *Wilton* only "established the contours of . . . abuse of discretion review . . . where the denial is based on there being a parallel proceeding which presents the opportunity to ventilate the same state law issues in the state courts." *Verizon New England, Inc. v. Int'l*

17

*Bhd. of Elec. Workers, Local No. 2322*, 651 F.3d 176, 187–88 (1st Cir. 2011). As a result, the First Circuit found it unclear whether *Wilton* had overruled its own heightened abuse of discretion review in a case raising issues of federal law. *Id.* at 187 n.8 (citing *Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530 (1st Cir. 1995)). We do not share this concern and believe *Wilton* marked an end to the standard in *Exxon Corp. Wilton* did limit its discretion holding to the question whether "the District Court acted within its bounds in staying [the underlying] action for declaratory relief where parallel proceedings, presenting opportunity for ventilation of the same state law issues, were underway in state court." 515 U.S. at 290. Applying *Brillhart*, it answered in the affirmative. *Id.* at 289–90. However, the authority that informed the Supreme Court's standard of review holding was the DJA. *Id.* at 289 ("We believe it more consistent *with the statute* to vest district courts with discretion in the first instance . . . ." (emphasis added)). Admittedly, *Wilton* expressly declined to delineate the boundaries of a district court's discretion when no parallel state proceedings exist. *Id.* at 290. But while this implies that the contours of a district court's discretion can vary with the facts, it does not suggest that the standard of appellate review compelled by the DJA itself changes as well. Indeed, it is the district court's peculiar familiarity with those facts that undergirded the Court's rejection of a higher standard of review. *Id.* Consequently, our role is to ensure the "sound administration of the Declaratory Judgment Act" through "proper application of the abuse of discretion standard on appellate review[,]" thereby "provid[ing] appropriate guidance to district courts." *Id.* at 289. Because we find that this role remains unchanged

18

to grant or withhold a declaratory judgment for abuse of discretion. *Wilton*, 515 U.S. at 289–90; *see also Summy*, 234 F.3d at 134. Nevertheless, as discussed below, this does not mean that district courts' DJA discretion is effectively unreviewable. *See Wilton*, 515 U.S. at 289 (rejecting contention that abuse of discretion review "is tantamount to no review" at all).

### 2.

Under the DJA, "any court of the United States . . . *may* declare the rights and other legal relations of any interested party." 28 U.S.C. § 2201 (emphasis added). This provision "place[s] a remedial arrow in the district court's quiver" and confers a "unique and substantial discretion" on federal courts to determine whether to declare litigants' rights. *Wilton*, 515 U.S. at 286, 288. The "breadth of leeway" granted to federal courts originates in the "statute's textual commitment to discretion." *Id.* at 286–87. Consequently, district courts are authorized, "in the sound exercise of [their] discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close." *Id.* at 288.

Although an exercise of discretion must be "sound," the Supreme Court has otherwise framed DJA discretion in broad terms: "[T]he propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power." *Id.* at 287

---

despite the absence of parallel state proceedings, we believe the *Wilton* standard replaced that in *Exxon Corp.*

19

(quoting *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 243 (1952)). Rather than being subject to the "normal principle that federal courts should adjudicate claims within their jurisdiction," district courts exercising DJA discretion are governed by "considerations of practicality and wise judicial administration." *Id.* at 288.

Over seventy years ago, the Supreme Court in *Brillhart* discussed relevant considerations for a district court's sound exercise of discretion in a particular factual circumstance, namely, where "another proceeding was pending in a state court in which all the matters in controversy between the parties could be fully adjudicated." 316 U.S. at 495. The Court reasoned that the existence of such proceedings was relevant because

> [o]rdinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided.

*Id.* The Court enumerated specific factors for courts to consider in such circumstances,[11] but was careful to make

---

[11] Courts should consider "whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court."

20

clear that its list was non-exhaustive. *Id.* ("We do not now attempt a comprehensive enumeration of what in other cases may be revealed as relevant factors governing the exercise of a district court's discretion.").

A half century later, in *Wilton*, the Supreme Court addressed a "virtually identical" circumstance involving the contours of DJA discretion during parallel state court proceedings. 515 U.S. at 279. The Court affirmed *Brillhart*'s relevance. *Id.* at 282–88. It reiterated the non-exhaustive nature of *Brillhart*'s factors, characterizing them as providing "useful guidance." *Id.* at 283. Despite noting the "unique and substantial discretion" granted to district courts by the DJA, *Wilton* narrowly tailored its holding. *Id.* at 286, 290. It expressly declined "to delineate the outer boundaries of that discretion in other cases, for example, . . . cases in which there are no parallel state proceedings." *Id.* at 290. As discussed, *Wilton* established abuse of discretion as the proper standard of appellate court review. *Id.* at 289–90.

---

*Brillhart*, 316 U.S. at 495. Answering this question may require inquiring

> into the scope of the pending state court proceeding . . . the nature of the defenses open there. . . . whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc.

*Id.*

21

*Brillhart* and *Wilton* stand for at least two broad principles: (1) that federal courts have substantial discretion to decide whether to exercise DJA jurisdiction, and (2) that this discretion is bounded and reviewable. Accordingly, this Circuit has acknowledged the DJA's grant of discretion while cautioning that "what is granted is an opportunity to exercise a reasoned discretion." *Bituminous Coal Operators' Assoc. v. Int'l Union, United Mine Workers of Am.*, 585 F.2d 586, 596 (3d Cir. 1978), *abrogated on other grounds by Carbon Fuel Co. v. United Mine Workers of Am.*, 444 U.S. 212 (1979). Thus, over the years we have enumerated factors for district courts to consider when exercising DJA discretion. We have required district courts to consider four general factors:

> (1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;
> (2) the convenience of the parties;
> (3) the public interest in settlement of the uncertainty of obligation; and
> (4) the availability and relative convenience of other remedies.

*Pa., Dep't of Envtl. Res.*, 923 F.2d at 1075 (citing *Terra Nova Ins. Co. v. 900 Bar, Inc.*, 887 F.2d 1213, 1224 (3d Cir. 1989); *Bituminous Coal Operators' Assoc.*, 585 F.2d at 596). We have also suggested that courts "seek to prevent the use of the declaratory action as a method of procedural fencing, or as a means to provide another forum in a race for res judicata." *Terra Nova*, 887 F.2d at 1225 (quoting 6A J. Moore, J. Lucas & G. Girtheer, Jr., Moore's Federal Practice ¶ 57.08[5], at 57–50 (2d ed. 1987)).

22

Finally, in the insurance context, we have "suggested relevant considerations" for whether a court must decline jurisdiction under the DJA:

> (1) A general policy of restraint when the same issues are pending in a state court;
> (2) An inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion;
> (3) Avoidance of duplicative litigation.

*Summy*, 234 F.3d at 134 (quoting *Pa., Dep't of Envtl. Res.*, 923 F.2d at 1075).[12]

The insurance coverage context has been particularly fertile ground for exercising—and testing the boundaries of—DJA discretion, especially since our decision in *Summy*.[13]

---

[12] Though not implicated here, we have also concluded that where the issues include "federal statutory interpretation, the government's choice of a federal forum, an issue of sovereign immunity, or inadequacy of the state proceeding," district courts' discretion to decline jurisdiction is not "open-ended." *Summy*, 234 F.3d at 134 (citing *Pa., Dep't of Envtl. Res.*, 923 F.2d at 1076–79).

[13] In *Summy*, a property owner and its insurer disputed whether an insurance policy covered the poisoning of a child in his home, allegedly due to lead paint. 234 F.3d at 131–32. The insurer filed a declaratory judgment action in federal court regarding its duty to cover the owner. *Id.* at 132. The owner moved to dismiss or stay, arguing that the District Court should decline jurisdiction. *Id.* Subsequently, the owner filed for a declaratory judgment in state court, which the

*See, e.g., Seelye*, 198 F. Supp. 2d at 631 (finding such cases "all too common"). In *Summy*, we addressed the common case of an insurance company invoking diversity jurisdiction to seek a declaratory judgment on a purely state law matter and articulated now oft-quoted language: "The desire of insurance companies and their insureds to receive declarations in federal court on matters of purely state law has no special call on the federal forum." 234 F.3d at 136.

*Summy* provided other guidance as well. It concluded that when applicable state law is "uncertain or undetermined, district courts should be particularly reluctant" to exercise

---

insurer moved to dismiss. *Id.* The District Court retained jurisdiction and granted the insurer's summary judgment motion. *Id.* At the time the District Court decided to exercise its jurisdiction, only two Pennsylvania trial courts had ruled on the issue, and both were later appealed. *Id.* The Third Circuit vacated and remanded with directions to dismiss because assuming jurisdiction was not a "sound" exercise of discretion. *Id.* at 136. It noted that judicial efficiency was not promoted when evidence was considered by both federal and state courts and where federal court jurisdiction interfered with the state court's ability efficiently to resolve the declaratory judgment and underlying tort action. *Id.* at 135–36. Additionally, jurisdiction was a "vexatious" and "gratuitous interference" with state litigation because two trial court decisions, but no appellate cases, existed when the District Court decided the issue, and the state forum was "fully able and prepared to resolve [the] purely state law issue." *Id.* at 136 (citing *Brillhart*, 316 U.S. at 495). Finally, no federal interests were promoted because the case involved no federal question. *Id.*

DJA jurisdiction. *Id.* at 135. Rather, the proper relationship between federal and state courts requires district courts to "step back" and permit state courts to resolve unsettled state law matters. *Id.* at 136. It found that "the state's interest in resolving its own law must not be given short shrift simply because [parties] perceive some advantage in the federal forum." *Id.* Moreover, "[w]hen the state law is firmly established, there would seem to be even less reason for the parties to resort to the federal courts. Unusual circumstances may occasionally justify such action, but declaratory judgments in such cases should be rare." *Id.*

Additionally, *Summy* concluded that federal courts should decline jurisdiction where "doing so would promote judicial economy by avoiding duplicative and piecemeal litigation." *Id.* at 135. It also noted that such insurance cases lack a federal question or interest. *Id.* at 136. Finally, *Summy* found that district courts should weigh a party's "vigorous objection" to the district court's assumption of jurisdiction. *Id.*

*3.*

Of course, *Summy* involved the existence of a pending state court case involving the same issue. *Id.* at 131. We have never squarely addressed the contours of DJA discretion in the absence of pending parallel state proceedings. Facing this open question, our district courts have applied *Summy* with varying results.

In the instant matter, the District Court declined jurisdiction *sua sponte,* citing the "trend" of federal district courts in Pennsylvania "to decline to exercise jurisdiction

25

over declaratory judgment actions, involving an insurance company, that are solely brought on diversity, and have no federal question or interest." *Reifer*, 943 F. Supp. 2d at 508. It recognized, however, that the propriety of doing so was "not settled law." *Id.* The District Court quoted extensively from *Allstate Property & Casualty Insurance Co. v. Owens*, No. 11-4, 2011 WL 94412 (W.D. Pa. Jan. 11, 2011), and, following that case, rejected the interpretation that *Summy* compelled it, *per se*, to exercise jurisdiction in the absence of a pending parallel state proceeding. *Id.* at 509–11. In doing so, the District Court expressed concern that requiring courts to retain jurisdiction simply because no parallel proceedings have been filed could invite forum shopping.[14] *Id.* at 511. The District Court concluded that "[f]or the sake of comity," it would follow this trend and "decline to exercise jurisdiction over this purely state law issue." *Id.*

Westport advances multiple arguments contending that the District Court abused its discretion. First, it argues that the three *Summy* factors enumerated above, which it claims "are controlling," are not implicated in this case. (Appellant Br. 24–26, 28.) The issues are not pending in state court; there is no conflict between Westport's duty to defend, if any, and its claim of non-coverage; and there is no risk of duplicative litigation. Westport also argues that, because the District Court declined jurisdiction a year after removal, and after the Magistrate Judge issued a 39-page ruling, considerations of

---

[14] Specifically, an insurer, instead of filing a declaratory judgment action, could wait for the insured to file the same in state court. *Reifer*, 943 F. Supp. 2d at 511. It could then remove the case to federal court assured that the lack of parallel state proceedings would prevent the district court from declining jurisdiction. *Id.*

26

judicial economy and fairness militate toward exercising jurisdiction. Additionally, Westport contends that the issue of Pennsylvania law raised by Reifer's claim is well settled and that the District Court was sufficiently equipped to apply it.[15]

Finally, Westport argues that *Owens* was incorrectly decided and that the District Court abused its discretion in following its lead. The "trend" identified by the District Court is instead a "misappli[cation] of *Summy*," whereby district courts "dismiss, by rote, declaratory judgment suits involving insurance coverage without considering the particular facts of cases in light of the *Summy* factors." (Reply Brief of the Appellant ("Appellant Reply Br.") at 11.) Westport reads *Summy* only to apply when "a state court is poised to apply its law in a related proceeding and the federal court has no interest of its own." (*Id.* at 12.) Thus, it concludes, *Summy*'s three factors "pertain to situations in which related proceedings are or may be brought in state court." (*Id.*)

Consequently, Westport contends that, in the absence of pending parallel state proceedings, "the district court should proceed to resolve the parties' dispute, even in the absence of a federal question or interest."[16] (Appellant Br. at

---

[15] Westport also argues that it is fundamentally unfair to permit Reifer to raise the jurisdictional issue after the Magistrate Judge's unfavorable ruling. However, as noted above, the District Court raised its jurisdiction *sua sponte*. *Id.*

[16] In its Reply Brief, Westport clarifies its position: "Westport is not arguing that parallel state court proceedings must be present before a district court may dismiss a declaratory judgment action. But, in the absence of related proceedings, the dismissal of a declaratory judgment action should be the exception, not the rule, and the mere absence of a unique

29.) Specifically, Westport argues that the absence of a federal question or interest is insufficient reason, by itself, to decline jurisdiction under the DJA. Where no pending parallel state proceedings exist, "the district court should normally adjudicate such claims within the jurisdiction afforded to it by Congress."[17] (Appellant Reply Br. at 13.)

Westport's arguments and the District Court's decision require us to resolve two issues: (1) the effect on a district court's DJA discretion of the absence of pending parallel state proceedings, and (2) assuming the district court maintains discretion in such circumstances, the scope of that discretion.

*4.*

---

federal substantive interest in the dispute should not be sufficient to warrant dismissal under such circumstances." (Appellant Reply Br. at 14 n.2 (citing *Scottsdale Ins. Co. v. Detco Indus., Inc.*, 426 F.3d 994, 998 (8th Cir. 2005)).)

[17] Westport also takes issue with the District Court's forum shopping concerns. The District Court was concerned that a rule that required it to exercise jurisdiction in the absence of parallel state proceedings could lead to manipulation and forum shopping. *Reifer*, 943 F. Supp. 2d at 511. Rather than address this, Westport argues that the District Court's concern is irrelevant because Reifer failed to present evidence that Westport was forum shopping. Westport's argument misses the mark. The District Court did not imply that Westport engaged in forum shopping, nor did it consider forum shopping as a factor when determining whether to exercise jurisdiction. Rather, the District Court cited the potential for forum shopping as a reason against adopting a rule compelling it to always exercise jurisdiction in the absence of parallel state proceedings. *Id.*

We have previously noted that, pursuant to *Brillhart*, "the mere existence of a related state court proceeding" does not require a district court to decline to exercise jurisdiction under the DJA. *Pa., Dep't of Envtl. Res.*, 923 F.2d at 1075 (citing *Brillhart*, 316 U.S. at 495). We have not yet addressed the related question of whether the mere non-existence of pending parallel state court proceedings requires the district court to exercise its jurisdiction and hear the case under the DJA. The Supreme Court and this Circuit have long noted the importance of pending parallel state proceedings as a consideration in a district court's exercise of jurisdictional discretion under the DJA. *E.g.*, *Brillhart*, 316 U.S. at 494; *Terra Nova*, 887 F.2d at 1224. Despite this focus, no binding authority has held that a district court has no—or less—discretion to decline jurisdiction in the absence of such proceedings.[18] *Brillhart* and *Wilton* only discussed DJA discretion in the context of pending parallel state proceedings because that is the factual context with which they were faced. Thus, they illustrate only one application of DJA discretion to a fact pattern that included the existence of parallel state proceedings. They do not stand for the proposition that DJA discretion has no life beyond the circumstances to which they applied it. *See Wilton*, 515 U.S. at 288 n.2 (suggesting that pendency of a state proceeding is but one ground upon which jurisdiction may be declined); *Brillhart*, 316 U.S. at 495 ("We do not now attempt a comprehensive enumeration of what in other cases may be

---

[18] At most, *Wilton* implies that district courts' discretion may be more circumscribed where no parallel state proceedings exist. *See* 515 U.S. at 290 (describing the absence of parallel state proceedings as an "outer boundar[y]" of a district court's jurisdictional DJA discretion).

revealed as relevant factors governing the exercise of a district court's discretion.").

Many of our sister circuits have addressed this issue and explicitly held that the existence or non-existence of pending parallel state proceedings is but one factor for a district court to consider when exercising its DJA jurisdiction. *Scottsdale Ins. Co. v. Detco Indus., Inc.*, 426 F.3d 994, 998 (8th Cir. 2005); *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 394 (5th Cir. 2003); *United States v. City of Las Cruces*, 289 F.3d 1170, 1183 (10th Cir. 2002); *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 423 (4th Cir. 1998) (per curiam); *Golden Eagle Ins. Co. v. Travelers Cos.*, 103 F.3d 750, 754 (9th Cir. 1996), *overruled on other grounds by Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220 (9th Cir. 1998) (en banc). We agree. Our decision in *Summy* does not compel a different result. *Summy* circumscribes a district court's discretion to exercise jurisdiction and "suggests relevant considerations" for a district court's analysis. 234 F.3d at 134, 136. We do not read *Summy* to create a rule that tethers a district court's DJA discretion to whether a party has or has not filed a parallel action in state court. Indeed, *Summy* itself lists pending state proceedings addressing the same issues as one non-exhaustive factor. *Id.* at 134.[19]

---

[19] Further, many of the cases cited by Westport found that *Summy* did not compel them to decline jurisdiction in the absence of parallel state proceedings. *See, e.g.*, *Ackerman v. Geico Gen. Ins. Co.*, No. 2:12-cv-00005, 2012 WL 1377392, at *2–3 (W.D. Pa. Apr. 19, 2012) (finding jurisdiction "proper" where, *inter alia*, "no underlying state court action [created] an existing, and more apt, forum"); *Westfield Ins. Co. v. Wertz*, No. 10-03066, 2011 WL 2135579, at *3 (E.D.

In light of the foregoing authorities, we conclude that it is not a *per se* abuse of discretion for a court to decline to exercise jurisdiction when pending parallel state proceedings do not exist. Nor is it a *per se* abuse of discretion for a court to exercise jurisdiction when pending parallel state proceedings do exist. Rather, the existence or non-existence of pending parallel state proceedings is but one factor for a district court to consider. We concur with the Fourth Circuit that holding otherwise would "be inconsistent with our long-standing belief that district courts should be afforded great latitude in determining whether to grant or deny declaratory relief." *Ind-Com Elec. Co.*, 139 F.3d at 423.

Although our sister circuits have found the existence or non-existence of pending parallel state proceedings only to be but one factor, they have placed upon it increased emphasis. *E.g.*, *Scottsdale Ins. Co.*, 426 F.3d at 997–98 (holding that DJA discretion is diminished in absence of parallel state proceedings); *Sherwin-Williams Co.*, 343 F.3d at 394 (absence of parallel state proceeding is "important factor," which weighs "strongly against dismissal"); *Ind-Com*

---

Pa. May 27, 2011) (finding that lack of parallel state action was a factor which weighed in favor of exercising jurisdiction); *TIG Ins. Co. v. Tyco Int'l, Ltd.*, No. 3:08-cv-1584, 2009 WL 151597, at \*5 (M.D. Pa. Jan. 21, 2009) (finding jurisdiction appropriate because lack of pending state proceedings meant that it did not "disrupt the state-federal balance by entertaining a claim that may be the subject of a future state court action"). This is different from saying that *Summy* compelled these courts to exercise jurisdiction. Rather, what they exercised was their discretion.

*Elec. Co.*, 139 F.3d at 423 (existence of state proceeding is "significant factor"); *Golden Eagle Ins. Co.*, 103 F.3d at 754 (existence of parallel state proceeding is "major factor"). We agree and believe the absence of pending parallel state proceedings militates significantly in favor of exercising jurisdiction, although it alone does not require such an exercise. In this circumstance, as part of exercising sound and reasoned discretion, district courts declining jurisdiction should be rigorous in ensuring themselves that the lack of pending parallel state proceedings is outweighed by opposing factors. This same rationale applies when state proceedings do exist. The existence of pending parallel state proceedings militates significantly in favor of declining jurisdiction, although it alone does not require doing so. In this circumstance, as part of exercising sound and reasoned discretion, district courts exercising jurisdiction should be rigorous in ensuring themselves that the existence of pending parallel state proceedings is outweighed by opposing factors.

*5.*

When addressing this question, our sister circuits have commonly articulated anew or reiterated sets of factors for district courts to consider when exercising their sound and reasoned discretion.[20] *See, e.g.*, *Scottsdale Ins. Co.*, 426 F.3d

---

[20] We list them for the convenience of all concerned. In the Fourth Circuit, district courts should consider (1) whether declaratory relief "will serve a useful purpose in clarifying and settling the legal relations in issue"; (2) whether declaratory relief "will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding"; (3) "the strength of the state's interest in having

the issues raised in the federal declaratory judgment action decided in the state courts"; (4) "whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending"; (5) "whether permitting the federal action to go forward would result in unnecessary 'entanglement' between the federal and state court systems because of the presence of overlapping issues of fact or law"; and (6) "whether the declaratory judgment action is being used merely as a device for 'procedural fencing'—that is, 'to provide another forum in the race for res judicata' or 'to achiev[e] a federal hearing in a case otherwise not removable.'" *Ind-Com Elec. Co.*, 139 F.3d at 422 (alteration in original) (quoting *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 377 (4th Cir. 1994); *Mitcheson v. Harris*, 955 F.2d 235, 237–40 (4th Cir. 1992); *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937)).

In the Fifth Circuit, district courts must consider "(1) whether there is a pending state action in which all of the matters in controversy may be fully litigated; (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant; (3) whether the plaintiff engaged in forum shopping in bringing the suit; (4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist; (5) whether the federal court is a convenient forum for the parties and witnesses; (6) whether retaining the lawsuit would serve the purposes of judicial economy; and (7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending." *Sherwin-Williams Co.*, 343 F.3d at 388 (quoting *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590–91 (5th Cir. 1994)).

The Seventh Circuit has identified four factors: whether (1) "the declaratory suit presents a question distinct from the issues raised in the state court proceeding"; (2) "the parties to the two actions are identical"; (3) "going forward with the declaratory action will serve a useful purpose in clarifying the legal obligations and relationships among the parties or will merely amount to duplicative and piecemeal litigation"; and (4) "comparable relief is available to the plaintiff seeking a declaratory judgment in another forum or at another time." *Nationwide Ins. v. Zavalis*, 52 F.3d 689, 692 (7th Cir. 1995).

The Eighth Circuit has adopted the Fourth Circuit's test. *Scottsdale Ins. Co.*, 426 F.3d at 998.

The Ninth Circuit has suggested the following considerations: (1) party convenience; (2) the availability and relative convenience of alternate remedies, and whether the declaratory action (3) "will settle all aspects of the controversy;" (4) "will serve a useful purpose in clarifying the legal relations at issue;" (5) "is being sought merely for the purposes of procedural fencing or to obtain a 'res judicata' advantage; or" (6) "will result in entanglement between the federal and state court systems." *Dizol*, 133 F.3d at 1225 n.5 (quoting *Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 145 (9th Cir. 1994) (Garth, J. concurring)).

The Tenth Circuit's factors are "(1) whether a declaratory action would settle the controversy; (2) whether it would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race to *res judicata*'; (4) whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state

at 998–99 (collecting cases). We find that establishing a uniform approach from the many sets of factors will better clarify for parties and district courts the relevant considerations to sound and reasoned discretion, as well as help properly focus our abuse of discretion review.

Thus, when determining whether to exercise DJA jurisdiction, in addition to consulting the *Brillhart* factors,[21] a district court should guide its exercise of sound and reasoned discretion by giving meaningful consideration to the following factors to the extent they are relevant:

jurisdiction; and (5) whether there is an alternative remedy which is better or more effective." *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994) (quoting *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1063 (6th Cir. 1987)).

[21] In circumstances like *Brillhart*'s, courts should consider "whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court." *Brillhart*, 316 U.S. at 495. Answering this question may require inquiring

> into the scope of the pending state court proceeding . . . the nature of the defenses open there. . . . whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc.

*Id.*

(1) the likelihood that a federal court declaration will resolve the uncertainty of   obligation which gave rise to the controversy;

(2) the convenience of the parties;

(3) the public interest in settlement of the uncertainty of obligation;

(4) the availability and relative convenience of other remedies;

(5) a general policy of restraint when the same issues are pending in a state court;

(6) avoidance of duplicative litigation;

(7) prevention of the use of the declaratory action as a method of procedural       fencing or as a means to provide another forum in a race for *res judicata*; and

(8) (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.[22]

---

[22] We articulate this criteria in awareness of the Ninth Circuit's troubled experience with requiring its district courts "to consider the discretionary nature of [their] jurisdiction at the outset of the case" even in the absence of a pending state action and where the parties did not raise the issue below. *Dizol*, 133 F.3d at 1223 (quoting *St. Paul Fire & Marine Ins. Co. v. F.H.*, 117 F.3d 435, 437 (9th Cir. 1997)). We express no opinion today whether district courts, prior to exercising DJA jurisdiction, must always address the appropriateness of doing so even when not raised by the parties. We merely hold that, when the propriety of DJA jurisdiction is raised by the

These factors are non-exhaustive, and there will be situations in which district courts must consult and address other relevant case law or considerations.[23] For example, in insurance cases, (and to the extent *Summy* applies elsewhere) *Summy*'s additional guidance should also be considered. The weighing of these factors should be articulated in a record sufficient to enable our abuse of discretion review.

Enumerating these factors requires us to address the *Owens* trend followed by the District Court. This trend could be problematic for two reasons. First, there is nothing to distinguish these cases from any other declaratory judgment action that invokes diversity jurisdiction and asks federal

---

parties or by the district court *sua sponte*, the district court should meaningfully consider the above guides in exercising its sound and reasoned discretion. This weighing should be articulated in a record sufficient to enable our abuse of discretion review.

[23] We understand the holding of *Commonwealth of Pennsylvania, Department of Environmental Resources* to have been derived from consideration of the above factors. 923 F.2d at 1076 ("We turn now to the application of these many factors to the facts before us.") To the extent that case articulated additional relevant considerations, district courts facing the same or similar issues should continue to consult its guidance. *See, e.g.*, *Summy*, 234 F.3d at 134 (citing *Pa, Dep't of Envtl. Res.*, 923 F.2d at 1076–79) (noting that district courts facing issues of "federal statutory interpretation, the government's choice of a federal forum, an issue of sovereign immunity, or inadequacy of the state proceeding," do not have open-ended discretion to decline jurisdiction).

courts to declare the rights of parties under settled state law. Placing our imprimatur on this exercise of discretion might on its face appear to permit declining jurisdiction *per se* in every such case. We are less than confident that wholesale, "revolving door" dismissal of such cases evidences a discretion that is either "sound," *Wilton*, 515 U.S. at 286, or "reasoned," *Bituminous Coal Operators' Assoc.*, 585 F.2d at 596. *See, e.g.*, *Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382, 390 (5th Cir. 2001) (finding abuse of discretion where district court failed to consider relevant factors and dismissed declaratory judgment suit "simply because it [did] not involve a question of federal law" (quoting *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 591 n.10 (5th Cir. 1994))). This is especially true where "[f]ederal and state courts are equally capable of applying settled state law to a difficult set of facts." *Heritage Farms Inc. v. Solebury Twp.*, 671 F.2d 743, 747 (3d Cir. 1982) (quoting Note, *Land Use Regulation, the Federal Courts and the Abstention Doctrine*, 89 Yale L.J. 1134, 1143 n.55 (1980)).

Second, these cases implicate neither an improper use of procedure by insurance companies nor unfairness to insureds. While we sympathize with our district courts' apparent frustration over the volume of such cases, we, like our sister circuit, "know of no authority for the proposition that an insurer is barred from invoking diversity jurisdiction to bring a declaratory judgment action against an insured on an issue of coverage." *Dizol*, 133 F.3d at 1225 (quoting *Aetna Cas. & Sur. Co. v. Merritt*, 974 F.2d 1196, 1199 (9th Cir. 1992)); *see also Sherwin-Williams Co.*, 343 F.3d at 398–400. Indeed, we know of no other circuit court which has approved the *per se* dismissal of declaratory judgment actions in these circumstances. Rather, as noted above, when pending parallel state proceedings do not exist, our sister circuits have

articulated extensive, multi-factor tests for district courts to consider. *See, e.g.*, *Scottsdale Ins. Co.*, 426 F.3d at 998–99 (collecting cases).

These concerns do not conflict with our holding in *Summy*. Despite our statements noting that such cases have "no special call on the federal forum" and that even less reason for federal jurisdiction exists when state law is "firmly established," *Summy*'s holding specifically turned on considerations relevant to the pending state court suit. 234 F.3d at 135–36.

We reject any reading of *Summy* that supports *per se* automatic declining of jurisdiction in every such case. On the other side of the coin, we also reject Westport's argument to the extent that it implies that, when *Summy*'s factors are not implicated, a district court must exercise its DJA jurisdiction. As our non-exhaustive, multi-factor test makes clear, there are many potential considerations that properly inform a district court's sound and reasoned discretion.

*6.*

We now turn to whether the District Court abused its discretion in this case by declining to exercise its DJA jurisdiction. We conclude that declining jurisdiction was proper because the lack of pending parallel state proceedings was outweighed by another relevant consideration, namely, the nature of the state law issue raised by Reifer. Where state law is uncertain or undetermined, the proper relationship between federal and state courts requires district courts to "step back" and be "particularly reluctant" to exercise DJA jurisdiction. *Id.* ("[T]he state's interest in resolving its own

law must not be given short shrift simply because one party or, indeed, both parties, perceive some advantage in the federal forum."). The fact that district courts are limited to predicting—rather than establishing—state law requires "serious consideration" and is "especially important in insurance coverage cases." *Id.* at 135.

Reifer argues that her claims raise "critical issues of state law and public policy that should be decided by Pennsylvania state courts." (Brief of Appellee at 19.) She contends that the instant case exemplifies Pennsylvania's "broken state system," which "[o]nly the state can repair." (*Id.*) She notes that Russo's negligence deprived her of her livelihood, and that his failure to notify Westport of her claim will deprive her of a remedy unless Westport is required to show prejudice. Reifer's argument proceeds in five steps:

>
> (1) Regulation of the practice of law is a matter of state law and the Pennsylvania Supreme Court "has inherent and exclusive power" to supervise attorney conduct, which it does by promulgating governing rules. (*Id.* at 19–20 (quoting Pa. R.D.E. 103).)
>
> (2) Pennsylvania Rule of Professional Conduct 1.4(c) requires attorneys to disclose publically whether they maintain the mandatory minimum coverage and notify existing clients if their coverage falls below the minimum or lapses.
>
> (3) These mandatory disclosures induce reasonable reliance on the belief that the public is protected against attorney malpractice.

(4) Claims-made policies are the only legal malpractice insurance policies available in Pennsylvania and, under current Pennsylvania law, insurers need not show prejudice before denying claims not made during the policy period.

(5) Thus, the protection the Pennsylvania Supreme Court intends Rule 1.4(c) to provide is illusory because a negligent attorney can commit malpractice *and* fail to report a malpractice claim, both harming the client and the client's prospect of recovery. This is true even if the attorney had malpractice insurance during the representation *and* when the malpractice claim was filed.

Reifer argues that Pennsylvania can and should fix this system by requiring insurance companies to cover late claims unless they can show prejudice. She contends that doing so would be a logical next step in Pennsylvania jurisprudence. For example, she invokes *Brakeman v. Potomac Insurance Co.*, in which the Pennsylvania Supreme Court—for public policy reasons, among others—required insurance companies to show prejudice when tardily notified of claims pursuant to occurrence contracts. 371 A.2d 193, 198 n.8 (Pa. 1977). She admits that Pennsylvania courts have never applied *Brakeman* to claims-made policies such as the one in question here, but contends that protecting the public requires doing so.

Westport frames the case as a mundane question of insurance coverage. It argues that remand was inappropriate, in part, because the relevant state law was well settled and the District Court was perfectly capable of applying it. It

contends that this case raises only the straightforward issue "whether an insurer must prove prejudice before declining coverage for late notice under a claims-made policy." (Appellant Br. at 16.) Pennsylvania courts, as well as federal courts applying Pennsylvania law, have "unanimously answered [this] question in the negative": Insurance companies simply need not show prejudice prior to denying coverage on claims-made policies. (*Id.*)

While we express no opinion on the merits of Reifer's claim, we believe that, at minimum, she makes a nonfrivolous argument for possibly carving an exception to governing Pennsylvania law in the context of legal malpractice insurance contracts. Federal courts are, of course, perfectly capable of applying state law, *Heritage Farms Inc.*, 671 F.2d at 747, even where nonfrivolous arguments are raised to change it; however, we believe this particular case is best decided in the state court system. Importantly, Reifer's argument implicates the policies underlying Pennsylvania's rules governing attorney conduct, which are promulgated by the Pennsylvania Supreme Court. *See, e.g.*, *Beyers v. Richmond*, 937 A.2d 1082, 1090 (Pa. 2007). Reifer's argument unmasks a potentially unintended and unforeseen consequence arising out of the nexus of those Rules and Pennsylvania insurance law, which places in the hands of negligent attorneys the responsibility of ensuring their clients receive a remedy. Reifer raises a legitimate concern that current Pennsylvania insurance law permits the fox to guard the henhouse and hinders realization of the Pennsylvania Supreme Court's intent. Thus, we believe her argument—whatever its merits—is best decided in the Pennsylvania court system because it directly raises a matter peculiarly within the

purview of that state's highest court.[24] *See, e.g.*, *id.* (noting the Pennsylvania Supreme Court's "exclusive authority" to govern attorney conduct).

Among other reasons, the District Court declined jurisdiction "[f]or the sake of comity." *Reifer*, 943 F. Supp. 2d at 511. It noted the importance of respecting the ability of the Pennsylvania court system "to enforce its own judgments decided by its own Courts of Common Pleas." *Reifer*, 2013 WL 2650275, at *2. We would have preferred the District Court to squarely address the alleged novelty of Reifer's state law claims, an argument she raised below. In the future, district courts should meaningfully consider the guidance discussed above when relevant, as well as any other relevant considerations in their exercise of sound and reasoned discretion. But under these circumstances we find that neither the parties nor judicial efficiency would benefit from a remand where we take issue with the District Court's procedures but not its result. We find that the issues raised place this case peculiarly within the purview of the Pennsylvania courts and that the District Court's discretionary decision achieved the proper result: declining jurisdiction and remanding to the state court.[25]

---

[24] Westport argues that Reifer stands in Russo's shoes, and that any individual claims she makes *as a client* are irrelevant. For the same reasons discussed above, we believe the Pennsylvania state courts are better suited to determine the heights of this alleged barrier to her argument invoking Pennsylvania's rules of attorney conduct, such as whether Reifer may amend her complaint to include individual claims.

[25] We acknowledge that the timing of the District Court's remand raises judicial efficiency concerns. Westport removed

## IV.   CONCLUSION

For the foregoing reasons, we affirm the decisions of the District Court to decline DJA jurisdiction and to deny reconsideration.

---

the instant case to federal court on March 23, 2012. The parties briefed the relevant issues and the Magistrate Judge considered the merits and issued a 39-page report and recommendation on October 12, 2012. Reifer and Westport expended resources preparing an objection and response respectively to the report and recommendation. After all of this effort, over one year after the case was originally removed, the district court, *sua sponte*, declined jurisdiction and remanded the case back to state court. For the parties to receive the declaration of rights they have vigorously contested for over two years, another court in another forum must now review the identical evidence, case law, and legal arguments which were the subject of the Magistrate Judge's detailed report and recommendation. Although the DJA confers "unique and substantial discretion" on federal courts to determine when to issue a declaratory judgment, such discretion is founded on "considerations of practicality and wise judicial administration." *Wilton*, 515 U.S. at 288. In a future case, such considerations may require a district court, when declining jurisdiction *sua sponte*, to do so in a more timely fashion than occurred here as a matter of exercising its sound and reasoned discretion. In the instant case, for the reasons discussed above, we find this factor outweighed by Reifer's state law argument.